FILED

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria, Virginia

2012 MAR 21  P 4: 10

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MICROHITS, INC.,<br>137 N. Larchmont Blvd. #168<br>Los Angeles, CA 90004,<br><br>VALCOM, INC.<br>2113A Gulf Blvd<br>Indian Rocks Beach, FL 33785,<br><br>               Plaintiffs,<br><br>      v.<br><br>MEGAUPLOAD, LTD.,<br>P.O. Box No. 28410<br>Gloucester Road Post Office<br>Hong Kong,<br><br>VESTOR, LTD.,<br>45th Floor<br>The Lee Gardens<br>33 Hysan Avenue<br>Causeway Bay, Hong Kong,<br><br>KIM DOTCOM (aka KIM SCHMITZ)<br>186 Mahoenui Valley Rd.<br>Coatesville, Auckland, New Zealand 0793,<br><br>MATHIAS ORTMANN,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 1:12 CV 327<br>LO/IDD |

## COMPLAINT

1. This is a civil suit seeking monetary damages from the Defendants for inducement of copyright infringement, contributory copyright infringement, common law infringement, and state common law copyright infringement and unfair competition.

2. From September 2005 through January 2012, the Defendants operated MegaUpload.com, a for-profit website that reproduced and distributed copies of copyrighted works on the Internet without the authorization of the owners of those copyrights.

3. Among the copyrighted works unlawfully distributed by the Defendants included works for which the Plaintiffs, Microhits, Inc. and Valcom, Inc., own the copyrights.

4. Over the past five years, the Defendants have expanded their operations into related Internet businesses which are connected to and financially dependent upon revenues derived from the infringement of copyrighted works on MegaUpload.com as induced by the Defendants.

5. Defendants' inducement of the infringement of Plaintiffs' copyrighted works and other violations of law (described below) have been willful, repeated, and a part and parcel of Defendants' business model.

## PARTIES

6. Plaintiff Microhits, Inc. ("Microhits") owns federally registered copyrights on sound recordings featuring the musical performances of the legendary Billie Holiday, Nat King Cole, Marvin Gaye, Frank Sinatra, Al Martino, Donny Hathaway, Rod Stewart, Muddy Waters, Howlin' Wolf, Lightnin' Hopkins, Junior Wells, Nina Simone, Louis Armstrong, Jerry Lee Lewis, Herbie Mann, and Bob James as well as such well-known modern artists as Missy Elliott, Christina Aguilera, Vanessa Hudgens, Harry Connick, Jr., Jane Monheit and new and emerging artists The Morgansterns, Stazz, Sharief and Lindsay Ray. Microhits worldwide catalog exceeds twenty-five thousand musical works and sound recordings. As described below, musical works and sound recordings whose

copyrights are owned by Microhits have been disseminated without Microhits' authorization on MegaUpload.com.

7. Plaintiff Valcom, Inc. ("Valcom") owns federally registered copyrights which includes feature films and television programs starring Denzel Washington, Bill Murray, Jackie Chan, Charlton Heston, Ronald Reagan, George C. Scott, Martin Sheen, Judy Garland, Bela Lugosi, John Carradine, Roy Rogers, Richard Chamberlain, Martin Landau, January Jones, Ryan Seacrest and many others. The Valcom audio and video library contains in excess of 6,000 works. As described below, works whose copyrights are owned by Valcom have been disseminated without Valcom's authorization on MegaUpload.com.

8. Defendant MegaUpload Limited is the registered owner of MegaUpload.com. MegaUpload Limited is a registered company in Hong Kong with a registry number of 0835149. Upon information and belief, MegaUpload Limited has a number of bank accounts in Hong Kong that have been used to facilitate Defendants' operations and to facilitate Defendants' enjoyment of their gains from infringement of copyrighted works. MegaUpload Limited's business model is predicated upon the unlawful dissemination of copyrighted works. Together with the other Defendants, MegaUpload Limited has benefited financially from the infringement of copyrighted works on the website MegaUpload.com. Defendant MegaUpload Limited is liable for the claims asserted.

9. Defendant Vestor Limited is a registered company in Hong Kong with a registry number of 0994358. Upon information and belief, Vestor was incorporated in Hong Kong on September 6, 2005. Upon information and belief, Vestor has a bank account in Hong Kong that has been used to facilitate Defendants' operations and to facilitate

Defendants' enjoyment of their gains from infringement of copyrighted works. Defendant Dotcom (aka Defendant Schmitz) is the sole director and shareholder of Vestor, which owns a majority share of MegaUpload Limited. Defendant Vestor Limited is liable for the claims asserted.

10. Kim Dotcom, aka Kim Schmitz and Kim Tim Jim Vestor ("Schmitz"), is a resident of New Zealand and Hong Kong and dual citizen of Finland and Germany. Schmitz founded Vestor Limited and MegaUpload Limited. Until on or about August 14, 2011, Schmitz served as the Chief Executive Officer of MegaUpload Limited. Schmitz employs, either personally or through MegaUpload Limited or affiliated entities, more than 30 people residing in nine countries to further the operations of MegaUpload Limited. Schmitz supervised the development of the MegaUpload.com website. *Inter alia*, upon information and belief, Schmitz negotiated contracts with advertisers and Internet Service Providers. Further, Schmitz administered the MegaUpload.com domain name. Upon information and belief, Schmitz has arranged millions of dollars in payments for the computer servers utilized by MegaUpload.com, and has also distributed proceeds of Defendants' profits attributable to infringed copyrighted works to co-defendant Ortmann and other key personnel of MegaUpload Limited and Vestor Limited. Schmitz is the sole shareholder of defendant Vestor Limited and owns 68% of MegaUpload.com and MegaUpload Limited (through Vestor Limited). Schmitz has obtained vast sums of money from his involvement in MegaUpload.com's operations, including more than $42 million in 2010 alone. Defendant Schmitz is liable for the claims asserted.

11. Defendant Mathias Ortmann is a citizen of Germany and a resident of both New Zealand and Hong Kong. Ortmann owns 25% of MegaUpload Limited. Ortmann is the Chief Technical Officer, co-founder, and a director of MegaUpload Limited. As the director and sole shareholder of a company called Netplus International Limited LLC, Ortmann effectively owns 25% of the shares of MegaUpload Limited. During all time periods pertinent to this case, Ortmann oversaw software programmers that developed MegaUpload.com, and has been responsible for handling technical issues with Internet Service Providers on behalf of MegaUpload.com. Ortmann's particular areas of responsibility include setting up new servers, sending and responding to equipment service requests, and solving problems involving connectivity to MegaUpload.com. Upon information and belief, Ortmann also had authority to distribute funds from one of the main financial accounts into which MegaUpload Limited and Vestor Limited funds were caused to be deposited (with Deutsche Bank AG). Ortmann has obtained vast sums of money from his involvement in MegaUpload.com's operations, including more than $9 million in calendar year 2010 alone. Defendant Ortmann is liable for the claims asserted.

## JURISDICTION AND VENUE

12.     This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) and (b), and principles of supplemental jurisdiction.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(2), (c), and 28 U.S.C. § 1400(a).

14.     Personal jurisdiction is proper because, to effectuate the civil violations described in this Complaint, the Defendants have availed themselves extensively of resources located within the United States and specifically within this District:

  a.  Carpathia Hosting is an Internet hosting provider headquartered in Dulles, Virginia. Carpathia Hosting has continuously provided the Defendants with leased computers, Internet hosting, and support services during time periods pertinent to this Complaint, and through January 2012. Carpathia Hosting has access to datacenters in Ashburn, Virginia; Harrisonburg, Virginia; Los Angeles, California; Phoenix, Arizona; and Toronto, Canada. Upon information and belief, the Defendants lease approximately 25,000 terabytes of data storage from Carpathia to store content associated with the MegaUpload.com website. More than 1,000 computer servers in North America are owned and operated by Carpathia Hosting for the benefit of Defendants; more than 525 such servers are currently located in Ashburn, Virginia.

  b.  The Defendants make use of the services of Leaseweb, an Internet hosting provider headquartered in the Netherlands.   Leaseweb provides the Defendants with leased computers, Internet hosting, and support services as of the date of this Indictment.  Leaseweb has eight datacenters in the Netherlands, Belgium, Germany, and the United States, including in this District. Leaseweb owns and hosts more than 630 computer servers for the benefit of Defendants, and the Defendants caused to be purchased an additional sixty servers hosted by Leaseweb in October 2011.

c. Cogent Communications ("Cogent") is a multinational Internet hosting and bandwidth provider that is headquartered in Washington, D.C., with offices and facilities in the Eastern District of Virginia. Cogent has provided the Defendants with leased computers, Internet bandwidth, hosting, and support services. Cogent owns and operates 43 datacenters worldwide. As of January 2012, the Defendants leased approximately thirty-six computer servers in Washington, D.C. and France from Cogent that have been used for MegaUpload.com.

d. PayPal, Inc. ("PayPal") is a U.S.-based e-commerce business. The Defendants have utilized a PayPal account to receive payments from users in the Eastern District of Virginia and elsewhere for premium subscriptions to the MegaUpload.com site. These subscriptions vary from $9.99 for monthly subscriptions, $59.99 for yearly subscriptions, and $200 to $260 for lifetime subscriptions. Upon information and belief, the Defendants have used the same PayPal account to pay Carpathia Hosting in the United States and Leaseweb, as well as other operating expenses of MegaUpload.com. Upon information and belief, the Defendants have received deposits to their Paypal account in excess of $110,000,000 from subscribers and other sources from on or about November 25, 2006 through roughly July 2011.

## FACTUAL ALLEGATIONS

15. The enforcement of copyright law and the proliferation of online copyright infringement are public policy priorities and concerns, respectively, of both Congress and

7

the Executive Branch. In a recent White Paper on Intellectual Property Enforcement Legislative Recommendations, the Obama administration notes that "[p]iracy and counterfeiting in the online environment are significant concerns for the Administration. They cause economic harm and threaten the health and safety of American consumers. . . We are aware that members of Congress share our goal of reducing online infringement and are considering measures to increase law enforcement authority to combat websites that are used to distribute or provide access to infringing products." *See* http://www.whitehouse.gov/sites/default/files/ip_white_paper.pdf (March 2011).

16. The Defendants, through the registered owner (Defendant MegaUpload Limited) have operated the website MegaUpload.com ("MegaUpload"), which was available during all time periods pertinent to this case both throughout the United States and the world.

17. MegaUpload and its users upload copyrighted and trademarked intellectual property (movies, songs, software, pictures, etc.) to its computer servers. After a file is uploaded, MegaUpload.com provides to its users a unique Uniform Resource Locator ("URL") which allows its users to view or download the file from the website. The URL's are disseminated throughout the internet by MegaUpload and its users, which enable anyone with the URL to access, copy, and download the intellectual property from MegaUpload's servers. In order to view, copy, or download such files from MegaUpload.com without waiting, the customer must purchase a membership fee, for as little as $9.99 per month. MegaUpload.com stores hundreds of thousands of pirated movies, songs, software, and images on its servers. Through the MegaUpload.com site, the Defendants knowingly facilitate the reproduction and distribution of pirated materials

to hundreds of thousands of consumers. Upon information and belief, MegaUpload.com has provided payouts to affiliates that catalog the URLs for all media available on MegaUpload.com.

18. Prior to being taken off-line by the United States Department of Justice in January 2012, MegaUpload.com was one of the most popular websites on the Internet, with site traffic reported as 45 million unique visitors per day.

19. MegaUpload encourages, and in some cases, pays its users to upload vast amounts of popular copyrighted content through its Rewards Programs. MegaUpload disseminated information about this program at the url www.MegaUpload.com/?c=rewards. MegaUpload.com states with regard to its Rewards Program, "The more downloads your files get, the more you can earn through our MegaUpload Rewards program." "Every qualifying download of one of your files will earn you a reward point. When you have reached a certain number of points, you can redeem them for premium status or even cash." "There is no limit! And even better: The more downloads your files get, the more you can earn through our MegaUpload Rewards program." MegaUpload offers $10,000 USD for 5,000,000 reward points.

20. At no time have any of the Defendants paid, or caused to be paid, any monies to Plaintiffs for the use or distribution of Plaintiffs' copyrighted works on MegaUpload.com.

21. The Defendants additionally profit from copyright infringement on their site by forcing users to watch advertisements prior to the play of copyrighted works on MegaUpload.com. MegaUpload Limited and Vestor Limited receive revenues from these advertisements.

22. MegaUpload disseminates URLs that provide access to copyrighted media. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url www.MegaUpload.com/?d=f2ypc1rj. When inputted by a user into his or her Internet browser, this url produced a web page with the title, "The Very Best of Nat King Cole." Such webpage was used to disseminate unauthorized copies of copyrighted works by Nat King Cole, including those to which Plaintiff Microhits holds copyright ownership.

23. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the following urls that were used to disseminate copies of copyrighted works by Donny Hathaway, including those to which Plaintiff Microhits holds copyright ownership:

    a. http://www.megaupload.com/?d=ugdl..dl (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway -- 1995.").

    b. http://www.megaupload.com/?d=czii..mi (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway – 1994 -- Live.").

    c. http://www.megaupload.com/?d=soqv..sa (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway – 1993").

    d. http://www.megaupload.com/?d=enw8..h9 (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway - live 1971").

    e.  http://www.megaupload.com/?d=7bw5..7s (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway – 1990").

    f.  http://www.megaupload.com/?d=rbuc..yf (when inputted by a user into his or her Internet browser, this url produced a web page with the title, "Donny Hathaway – 1996").

24. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=cud9..82 and http://www.megaupload.com/?d=dull..99.  Upon information and belief, such webpages were used to disseminate unauthorized copies of copyrighted works by Christina Aguilera, including those to which Plaintiff Microhits holds copyright ownership.

25. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=0lrg..dj. When inputted by a user into his or her Internet browser, this url produced a web page with the title, "Boys Don't Cry - I Wanna Be A Cowboy." Such webpage was used to disseminate unauthorized copies of a copyrighted work to which Plaintiff Microhits holds copyright ownership.

26. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url www.megaupload.com/?d=0CKVN7H6. When inputted by a user into his or her Internet browser, this url produced a web page with the title, "YOUNG MC (Stone Cold Ryhmin')." Such webpage was used to

disseminate unauthorized copies of a copyrighted work to which Plaintiff Microhits holds copyright ownership.

27. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=BIB0HXC8 NWHOT80sV1.part2.rar. When inputted by a user into his or her Internet browser, this url produced a web page with the title, "Felony / The Fanatic." Such webpage was used to disseminate unauthorized copies of a copyrighted work to which Plaintiff Microhits holds copyright ownership.

28. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=3HG2B9MO. Upon information and belief, such webpages were used to disseminate unauthorized copies of a copyrighted work by Ronnie Hudson ("West Coast Poplock," contained on the Grand Theft Auto San Andreas OST video game), to which Plaintiff Micronits holds copyright ownership.

29. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=LATMNRE5. Upon information and belief, such webpages were used to disseminate unauthorized copies of copyrighted works by Hilary Duff ("Mr. James Dean" and "The Last Song"), to which Plaintiff Microhits holds copyright ownership.

30. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=1SHWO6G2. When inputted by a user into his or her

Internet browser, this url produced a web page with the title, "Plain Gold Ring" – Nina Simone." Such webpage was used to disseminate unauthorized copies of a copyrighted work to which Plaintiff Microhits holds copyright ownership.

31. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=cxmv..qd. When inputted by a user into his or her Internet browser, this url produced a web page with the title, "The Honeydripper." Such webpage was used to disseminate unauthorized copies of a copyrighted work by Jools Holland & His Rhythm & Blues Orchestra to which Plaintiff Valcom holds copyright ownership.

32. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=l62q..k1. Upon information and belief, such webpages were used to disseminate unauthorized copies of copyrighted works by Mose Allison (Best of Mose Allison and/or "I've Got A Right to Cry") to which Plaintiff Valcom holds copyright ownership.

33. During time periods pertinent to this case and through January 19, 2012, inclusive,          the          Defendants          maintained          the          url http://www.megaupload.com/?d=UAG68MAZ.  When inputted by a user into his or her Internet browser, this url produced a web page with the title, "The Christmas." Similarly, during time periods pertinent to this case and through January 19, 2012, inclusive,          the          Defendants          maintained          the          url http://www.megaupload.com/?d=S95GJCRM.  When inputted by a user into his or her Internet browser, this url produced a web page with the title, "Harry For the Holidays – Harry Connick, Jr.  Such webpages were used to disseminate unauthorized copies of a

copyrighted work by Harry Connick Jr. to which Plaintiff Microhits holds copyright ownership.

34. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=7916..e0 and http://www.megaupload.com/?d=o5ny..oy. Such webpages were used to disseminate unauthorized copies of "Drive" by Vanessa Hudgens, to which Plaintiff Microhits holds copyright ownership.

35. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=SDRKRRAZ and www.megaupload.com/?d=JCK96ENC. Upon information and belief, such webpages were used to disseminate unauthorized copies of works by Roaring Lion to which Plaintiff Microhits holds copyright ownership.

36. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=tyzc..de. Such webpage was used to disseminate unauthorized copies of the motion picture "Alice Sweet Alice" to which Plaintiff Valcom holds copyright ownership.

37. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=52q6..6a. Such webpage was used to disseminate unauthorized copies of the motion picture "Beyond Obsession" to which Plaintiff Valcom holds copyright ownership.

38. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the url http://www.megaupload.com/?d=vayu..rp.

14

Such webpage was used to disseminate unauthorized copies of the motion picture "The Cold Room" to which Plaintiff Valcom holds copyright ownership.

39. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=f0du..n7 and http://www.megaupload.com/?d=eu1g..2i. Such webpages were used to disseminate unauthorized copies of the motion picture "Julius Caesar" to which Plaintiff Valcom holds copyright ownership.

40. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=n8a5..3y and http://www.megaupload.com/?d=7tvi..p1. Such webpages were used to disseminate unauthorized copies of the motion picture "Dead Before Dawn" to which Plaintiff Valcom holds copyright ownership.

41. During time periods pertinent to this case and through January 19, 2012, inclusive, the Defendants maintained the urls http://www.megaupload.com/?d=llqv..7a, http://www.megaupload.com/?d=5jsx..vi,      http://www.megaupload.com/?d=eh10..4h, http://www.megaupload.com/?d=1y6o..dt,      http://www.megaupload.com/?d=sm1r..3r, http://www.megaupload.com/?d=ur7n..qo,                              and http://www.megaupload.com/?d=zdkv..7h.   Such webpages were used to disseminate unauthorized copies of the motion picture "Gangland" to which Plaintiff Valcom holds copyright ownership.

42. The Defendants' inducement of copyright infringement was knowing.  On or about July 9, 2008, Bram Van der Kolk, who is a resident of both the Netherlands and New Zealand and whose title is "Programmer-in-Charge" with respect to Defendant

MegaUpload Limited, sent an e-mail to a third party entitled "funny chat-log." In the e-mail, Van Der Kolk copied the text of a previous online conversation between himself and Defendant Ortmann, in which Van Der Kolk had stated, "we have a funny business… modern days pirates :)[.]" Ortmann responded:

"we're not pirates, we're just providing shipping services to pirates :)".

43. The typed symbols ":)", as used in Ortmann's correspondence to Van der Kolk, are commonly understood to signify a "smiley face."

44. On or about July 8, 2010, Defendant Schmitz sent an e-mail to Defendant Ortmann and Sven Echternach, who was the Head of Business Development for Megamedia Limited (the parent company of several entities affiliated with MegaUpload). The email was entitled "attention." The e-mail contained a link to a news article entitled "Pirate Bay[1] and MegaUpload Escape Domain Seizure by US." The article discussed how, "[a]s part of an initiative to crack down on Internet piracy and counterfeiting, the U[.]S[.] Government recently took action against sites making available movies and TV shows." In the e-mail, Schmitz stated, "this is a serious threat to our business. Please look into this and see how we can protect ourselfs." Schmitz also asked, "Should we move our domain to another country (canada or even HK?)" Echternach responded, "In

---

[1] Four of the proprietors of the Pirate Bay website (www.piratebay.se) were found guilty by a Swedish court of assistance to copyright infringement on April 17, 2009 and sentenced to one year in prison and payment of a fine of approximately $4.2 million. *See* Eric Pfanner, *Four Convicted in Pirate Bay File-Sharing Trial* (Apr. 18, 2009), *available at* http://www.nytimes.com/2009/04/18/business/global/18pirate.html.

case domains are being seized from the registrar, it would be safer to choose a non-US registrar."

45. Defendant Schmitz has flaunted the illegality of MegaUpload.com's business methods.   On April 21, 2010, Defendant Dotcom sent an email correspondence to neighbors of his new residence in Coatesville, New Zealand.  Schmitz stated:

> Dear Neighborhood-watch
>
> As you all know I recently moved into the Neighborhood and I am a former hacker. Well I was just hacking into a local mail server and guess what I found.
>
> First of all let me assure you that having a criminal Neighbor like me comes with benefits.
>
> 1. Our newly opened local money laundering facility can help you with your tax fraud optimization.
>
> 2. Our network of international insiders can provide you with valuable stock tips.
>
> 3. My close personal relations with other (far worse) criminals can help you whenever you have to deal with a nasty Neighbor.
>
> In all seriousness: My wife, two kids and myself love New Zealand and "We come in peace". 15 years ago I was a hacker and 10 years ago I was convicted for insider trading. Hardly the kind of crimes you need to start a witch hunt for. Since then I have been a good boy, my criminal records have been cleared, and I created a successful Internet company that employs 100+ people. All the media has to report are old news. Why? Because I have chosen to avoid the media. Just look what the media did to this Neighborhood. Scary.
>
> Now you can make a choice:
>
> 1: Call Interpol, the CIA, and the Queen of England and try to get me on the next plane out of New Zealand.
>
> 2: Sit back, relax and give me a chance to do good for New Zealand and possibly the Neighborhood.

> If you feel like it come over for coffee sometimes. And don't
> forget to bring the cocaine (joke).
>
> All the best,
> Kim
>
> P.S. I did not park my Rolls Royce at the Zoo. I don't even like
> Zoo's. Too many small minded monkeys there.

Schmitz has owned or leased automobiles with the vanity license plates "HACKER,"

"GOD," "MAFIA," BAD," "EVIL," and "GUILTY."

46. On January 5, 2012, each of the Defendants to this action were indicted by the

United States in this District for conspiracy to commit racketeering, conspiracy to

commit copyright infringement, conspiracy to commit money laundering, and criminal

copyright infringement. *See United States v. Kim Dotcom, et al.*, 12cr03 (E.D. Va.).

47. Plaintiff Microhits is the owner of registered copyrights on each of the works

depicted on Exhibit A.   Upon information and belief, as set forth with respect to

numerous of these works above, and subject to discovery, many of these works have been

disseminated on MegaUpload.com on dates immediately preceding January 19, 2012, and

were available for downloading by users of MegaUpload.com as of January 19, 2012

(*i.e.*, the date the site was shuttered by the U.S. Department of Justice).   For example,

even as of the date of the filing of this Complaint, searches on the Google search engine

reflect that the url www.MegaUpload.com/?d=f2ypc1rj is associated with the content,

"The Very Best of Nat King Cole."

48. Plaintiff Valcom is the owner of registered copyrights on each of the works

depicted on Exhibit B (which such list is a non-exhaustive list).   Upon information and

belief, as set forth with respect to numerous of these works above, and subject to

discovery, many of these works have been disseminated on MegaUpload.com on dates

immediately preceding January 19, 2012, and were available for downloading by users of MegaUpload.com as of January 19, 2012 (*i.e.*, the date the site was shuttered by the U.S. Department of Justice).

49. The knowledge of Defendants Schmitz and Ortmann are to be imputed to Defendant MegaUpload Limited. Similarly, the knowledge of Defendant Schmitz is to be imputed to Defendant Vestor Limited. MegaUpload Limited is responsible for the acts of Schmitz and Ortmann described herein. Vestor Limited is responsible for the acts of Schmitz described herein.

## COUNT I: INDUCEMENT OF COPYRIGHT INFRINGEMENT

50. Plaintiffs repeat, reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 49 above.

51. Individuals using MegaUpload.com have directly infringed and are directly infringing Plaintiffs' copyrights on a daily basis by, for example, creating unauthorized reproductions of Plaintiffs' copyrighted sound recordings and programming and motion pictures and distributing copies of such works to the public in violation of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106, 501. The scope of infringement is massive, encompassing numerous of Plaintiffs' works (including without limitation those identified above) and numerous separate infringing acts.

52. Defendants are liable for inducing the copyright infringement of MegaUpload users. Defendants knowingly and intentionally designed, promoted, and marketed MegaUpload for the unauthorized copying and transmission of copyrighted sound recordings and programming and motion pictures, thereby actively facilitating,

encouraging and enticing MegaUpload users to engage in the infringement.   Indeed, Defendants intend to bring about such infringements.

53. Defendants have induced and continue to induce infringement by, for example, aiming to satisfy a known source of demand for copyright infringement, including the market comprising users of other infringing services that were shut down, such as Napster, Grokster, Limewire, and Kazaa.

54. Defendants further have induced and continue to induce infringement by, for example, failing to block or diminish access to infringing material using MegaUpload, even though there are technological means to do so — means that are known to Defendants, and some of which have already been employed successfully by Defendants' competitors that operate legally.

55. Defendants further have induced and continue to induce infringement by, for example, building and maintaining a business model to profit directly from a high volume of infringing use, including the MegaUpload Rewards program designed specifically to facilitate high volumes of infringement, and the draw of which is the millions of infringing files placed on the network by MegaUpload users.

56. Each violation of each Plaintiffs' rights in and to each copyrighted sound recording and musical composition and programming and motion pictures constitutes a separate and distinct act of copyright infringement.

57. Through the conduct described above, Defendants are liable for inducing the infringement described herein.

58. Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs, and has caused substantial damage to Plaintiffs.

59. As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in no event less than $30,000 per infringement and up to $150,000 per infringement should the Court find any infringement to be willful or intentional.

60. As an alternative to statutory damages (and for infringed works that do not qualify for statutory damages, if any), Plaintiffs at their election prior to judgment are entitled to recover their "actual damages and any additional profits of the [Defendants]" attributable to the infringement. 17 U.S.C. § 504(a)-(b).

61. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT II: CONTRIBUTORY COPYRIGHT INFRINGEMENT

62.  Plaintiffs repeat, reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 61 above.

63. Individuals using MegaUpload.com have directly infringed and are directly infringing Plaintiffs' copyrights on a daily basis by, for example, creating unauthorized reproductions of Plaintiffs' copyrighted sound recordings and musical compositions and programming and motion pictures, and distributing copies of the same to the public in violation of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106, 501. The scope of infringement is massive, encompassing numerous different sound recordings (including without limitation those enumerated above in the instant Complaint) and numerous separate infringing acts.

64. Defendants are liable as contributory infringers for the copyright infringement committed via MegaUpload.com. Defendants have knowledge of the massive

infringement that has occurred and continues to occur through MegaUpload, and Defendants have caused, enabled, facilitated, and materially contributed to that infringement. Defendants' knowledge of infringement is both actual and constructive.

65. Defendants have caused, enabled, facilitated, and materially contributed to the infringement complained of herein. Defendants have, in addition to the actions above, provided the tools, support, and instruction for the infringement via MegaUpload; directly and indirectly promoted the infringement via MegaUpload and intentionally built a business model to profit directly from it; and refused to exercise their ability to stop the infringement on MegaUpload.

66. Each violation of each Plaintiff's rights in and to each copyrighted sound recording and programming and motion picture constitutes a separate and distinct act of copyright infringement.

67. Through the conduct described above, Defendants are contributorily liable for the infringement described herein.

68. Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs, and has caused substantial damage to Plaintiffs.

69. As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to the maximum statutory damages under 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each timely-registered work that was infringed. The identities of additional infringed works (apart from those set forth above), and the total number of infringed works will be determined during discovery, and the pleadings adjusted accordingly.

70. As an alternative to statutory damages (and for infringed works that do not qualify for statutory damages, if any), Plaintiffs at their election prior to judgment are entitled to recover their "actual damages and any additional profits of the [Defendants]" attributable to the infringement. 17 U.S.C. § 504(a)-(b).

71. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT III: UNFAIR COMPETITION

72. Plaintiffs repeat, reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 66 above.

73. Numerous of the works at issue in this case ("the Pre-1972 Works") were created prior to February 15, 1972, such as those by artists professionally known as Roaring Lion, Sticks McGhee, Wingy Manone, The Platters, The Flares, The Zeniths, Tina Turner & Ike Turner, Ballin'jack, and others.

74. Plaintiffs possess exclusive ownership interest in and to the Pre-1972 Works, and those ownership interests are protected under Virginia state law.

75. Plaintiffs are engaged in the business of selling and distributing the Pre-1972 Works.

76. Through the conduct described above, Defendants are violating Plaintiffs' rights in the Pre-1972 Works, and are guilty of unfair competition under the common law of the state of Virginia. By the foregoing acts, Defendants are unfairly competing with Plaintiffs' use, sale, distribution and exploitation of the Pre-1972 Works, and otherwise taking advantage of and undermining Plaintiff's substantial creative and financial

investment therein, and unfairly misappropriating Plaintiff's rights to the Pre-1972 Worksfor Defendants' own commercial benefit.

77. As a direct and proximate result of Defendants' willful, wanton and reckless engagement in unfair competition, Plaintiffs have been damaged, and Defendants have been unjustly enriched, in an amount to be proved at trial for which damages and/or restitution and disgorgement are appropriate. Plaintiff is additionally entitled to punitive damages. As a direct and proximate result of Defendants' conduct, the Plaintiff is further entitled to recover all proceeds and other compensation received or to be received by Defendants arising from Defendants' infringements of the Pre-1972 Works.

78. Defendants' conduct has caused, and unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law and is entitled to injunctive relief prohibiting Defendants from further violating Plaintiff's rights in the Pre-1972 Works.

79. As to Count III, Plaintiffs further request compensatory damages and/or disgorgement and punitive damages in such amount as may be found or established at trial, arising from Defendants' willful and wanton violations of state law.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

Thomas M. Dunlap, Esq.
Virginia Bar No. 44016
W. Clifton Holmes, Esq.
Virginia Bar No. 78157
David Ludwig, Esq.
Virginia Bar No. 73157
199 Liberty St, SW
Leesburg, VA 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dglegal.com
cholmes@dglegal.com
dludwig@dglegal.com

March 21, 2012