UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICROHITS, INC., *et al.*, <br><br>                 *Plaintiffs* <br><br>      v. <br><br> MEGAUPLOAD, LTD., *et al.*, <br><br>                 *Defendants* | No. 1:12-cv-327 <br> (LO/IDD) |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION BY DEFENDANTS KIM DOTCOM AND MEGAUPLOAD LTD.
## FOR A STAY PENDING A PARALLEL CRIMINAL PROSECUTION

Defendants Kim Dotcom and Megaupload Ltd. have moved for a stay of this civil action. In this civil action, Defendants are being sued for indirect or secondary copyright infringement. These Defendants, and others, also have been indicted for racketeering, criminal copyright infringement, and other alleged crimes arising out of the same alleged activity.  *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) ("*Criminal Action*").[1] The gist of the scheme alleged in the *Criminal Action* is a conspiracy to commit criminal copyright infringement over the Internet.  *Criminal Action*, Doc. 34, *Superseding Indictment* ¶ 1 (identifying alleged conspirators, alleged object of conspiracy, and allegedly illegal income from the alleged scheme).   From September 2005 until January 2012, the so-called "Mega Conspiracy" allegedly used a website (megaupload.com) and numerous servers (including servers located in this District) to "reproduce[] and distribute[] copies of popular copyrighted content over the Internet without [the owner's] authorization" while earning money from users'

---

[1] The Court may take judicial notice of court records and pleadings in related criminal cases.  *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989).

subscription fees and advertising.  *Id*., Doc. 34, *Superseding Indictment* ¶¶ 2-8.  The criminal charges and the claims asserted in this civil action (brought by one of the alleged crime victims) both allege that a single set of Defendants engaged in a single course of conspiratorial conduct. The two cases involve the same alleged misconduct, objective, means, and injuries.

An order staying this case should be entered.  If not entered, Defendants Kim Dotcom and Megaupload Ltd. will be forced to choose between asserting Fifth Amendment rights in the *Criminal Action* and waiving them as part of their defense in this action.  That would be an unfair burden on their constitutional rights.   Moreover, although Defendants are presumed innocent in the *Criminal Action*, their assets have been frozen, and they cannot afford to pay counsel and e-discovery vendors to defend this complex matter.  Weighing such burdens against possible unfair prejudice to Plaintiffs, Defendants respectfully submit that the balance weighs in favor of a stay.  Defendants' operations have been shut down, halting any allegedly infringing activity, and Defendants' assets are frozen.   Plaintiffs and Defendants are participating in negotiations in the *Criminal Action* to preserve alleged evidence for use in civil actions, including this one.  Even if Plaintiffs should ultimately prevail and win a large judgment, the United States has priority in control over Defendants' assets and over their disposition, which may include restitution to injured copyright owners, which Plaintiffs claim to be.  In short, Plaintiffs will suffer no unfair prejudice or harm from a stay

### STATEMENT OF THE CASE

*Business and Technology Background:*   In the rapidly changing and innovative environment of the Internet, an important entry is "cloud storage," which refers to storage of electronic files and data of users that is maintained at locations remote from the user and accessed over the Internet.  Such storage is typically maintained on multiple computer servers in

high bandwidth Internet hosting facilities across the world, so that storage is said to "reside in the cloud." Cloud storage appears to the user like a hard drive with an expandable size. A small laptop or mobile device can have the same storage capacity as a large computer installation, and the user can access that storage with any device from anywhere in the world. Files can be stored in the cloud, and unique URLs to such files can be generated, and then used in anything from emails (to prevent the need for large attachments) to blog posts. Additional advantages of cloud storage include automated safety-backups and multiple-user access.

Cloud storage and cloud computing, however, have potentials for unauthorized file-sharing of copyrighted works. Such file-sharing is challenging to content owners, to Internet developers, to cloud storage providers, and to the courts. The challenges present new and difficult problems. Although the Internet is open and international in scope, copyright protections depend on particular national laws, which impose divergent standards.

Providers of cloud storage are generally unable to distinguish between lawful uses of cloud storage and purportedly unlawful uses. Copyright status of a work or file is not enough. One also must discern authorization status, and that is usually a species of contract where the predicate facts are hidden from the cloud storage provider. Indeed, one person's licensed mp3 file of a popular song may be another person's unauthorized "infringing" file. It appears that in both the *Criminal Action* and this civil case, alleged specific knowledge of infringement will have pivotal importance.[2] The element of scienter—whether Defendants knowingly and willfully engaged in copyright infringement—will be a chief focus in both cases.

***The Criminal Action:***   In the *Criminal Action*, the government alleges that from September 2005 until January 2012, the so-called "Mega Conspiracy" used a website

---

[2]  *See, e.g., Criminal Action*, Doc. 34, *Superseding Indictment* ¶¶ 53-58; *Complaint* ¶ 54.

(megaupload.com) and numerous servers (including servers located in this District) to "reproduce[] and distribute[] copies of popular copyrighted content over the Internet without [the owner's] authorization" while earning money from users' subscription fees and advertising. *Criminal Action*, Doc. 34, *Superseding Indictment* ¶¶ 2-8.  The government alleges that the "vast majority of files on [computer servers controlled by Defendants] are infringing copies of copyrighted works, and the Mega Conspiracy has purposefully made their rapid and repeated distribution a primary focus of their infrastructure." *Id.*, ¶ 8.  The government essentially alleges that Defendants' principal purpose in operating their system was to facilitate copyright infringing uses by the system's subscribers and users.

Claiming that all of the alleged conspirators' revenues were ill-gotten, the government seized Defendants' assets, which the government seeks to have forfeited.  *Id.*, Doc. 34, *Superseding Indictment* ¶¶ 106 *et seq.*  One justification for such an expansive forfeiture is to provide restitution to allegedly injured copyright owners.  *Id.*, Doc. 76, *Government Brief* at 15 (citing 21 U.S.C. § 853(i)(1) and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989) ("The Government's interest in winning undiminished forfeiture thus includes the objective of returning property, in full, to those wrongfully deprived or defrauded of it.").).  The government has even opposed the release of any of those assets to the Defendants to pay their defense costs in the *Criminal Action*.

In addition, the government's seizure of Defendants' assets has rendered Defendants unable to pay rental fees for the "Carpathia Servers" that performed actual system operations while Megaupload was in business.  *Id.*, Doc. 38 & 39, *Carpathia Hosting Motion* and *Brief*.  As ordered by the Court (*Id.*, Doc. 87), the prosecutor, the criminal defendants, and other interested parties, including alleged copyright victims, are negotiating terms for the preservation of

evidence on, control over and access to these servers.  Plaintiffs herein, Microhits, Inc. and Valcom, Inc., as alleged owners of copyrighted works, appeared in the *Criminal Action* in connection with the Carpathia Servers proceedings, claiming that their "interests … can reasonably be expected to be affected by the Court's ruling." *Id*., Doc. 80, *Microhits, Inc. and Valcom, Inc. Statement of Interest* at 1.  Plaintiffs also advised the Court that they are seeking access to the files from the Carpathia Servers already copied by the government.

     ***The Civil Action:***  Shortly after the *Superseding Indictment* was filed in the *Criminal Action*, Plaintiffs, Microhits, Inc. and Valcom, Inc. ("Plaintiffs"), filed this civil action on March 21, 2012, alleging counts for (1) inducement of copyright infringement, (2) contributory copyright infringement, and (3) unfair competition (Doc. 1, *Complaint*).  Plaintiffs' claims are based on the same factual allegations that are made in the *Criminal Action*—essentially alleging the same defendants, conspiracy, object, means, misconduct, injuries, and victims.  Indeed passages of the *Complaint* appear to be copied verbatim from the *Superseding Indictment*.

     The four defendants in the civil aciton are foreign nationals (*Id*., *Complaint* ¶¶ 8-11).  All four also are defendants in the *Criminal Action*.  Defendant Kim Dotcom was purportedly served through an authorized agent in Auckland, New Zealand, on April 13, 2012 (Doc. 11).  Defendant Megaupload Ltd. purportedly was served through an authorized agent in Hong Kong, China, on April 10, 2012 (Doc. 9).  The Court has entered an order extending the time for Defendants Kim Dotcom and Megaupload Ltd. to respond to the complaint (Doc. 13).  The other two defendants have not yet been served.

## ARGUMENT

If required to proceed to defend this civil litigation, Defendants Kim Dotcom and Megaupload Ltd. will be forced to choose between asserting Fifth Amendment rights in the *Criminal Action* and waiving those rights as part of their defense against the civil claims asserted in this action.  That would "constitutionally burden" Defendants' rights.  Weighing Plaintiffs' interests against such burdens shows that a stay is appropriate.  Defendants respectfully submit that Plaintiffs will suffer no unfair prejudice or injury if a stay is granted.  Defendants' business has been shut down, thus halting any allegedly infringing activity.  Defendants and Plaintiffs are participating in negotiations to preserve alleged evidence—that is, the files on the Carpathia Servers.  Other interests, such as those of the public and of non-parties, will not be disserved by a stay.

## I.   THE FIFTH AMENDMENT PRIVILEGE

The Fifth Amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself."  U.S.CONST. amend. V.  Assertion of the privilege is not an admission of guilt or wrongdoing, as it protects anyone who fears prosecution, including "the innocent who otherwise might be ensnared by ambiguous circumstances."  *Slochower v. Board of Higher Education*, 350 U.S. 551, 557-58 (1956).  The privilege is given "liberal construction in favor of the right it was intended to secure," and embraces answers which "would furnish a link in the chain of evidence needed to prosecute," as well as those which "would in themselves support a conviction."  *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  The Fifth Amendment privilege may be asserted in "any" proceeding, "civil or criminal … where the answers might incriminate [an individual] in future criminal proceedings."  *Lefkowitz v. Turley*, 414 U.S. 70, 77-78 (1973).  In civil litigation, the privilege is not limited to trial testimony; it

may be asserted "at the pleading stage," *North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987), *cert. denied*, 486 U.S. 1007 (1988), as well as in response to written discovery and during depositions, *see United States v. Kordel*, 397 U.S. 1, 7 (1970) (interrogatories); *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-58 (1983) (deposition).   Thus, Defendant Kim Dotcom would be entitled to assert his Fifth Amendment privilege at several stages in this case.

While Defendant Megaupload, Ltd., as a "collective entity," may not have a Fifth Amendment right to assert, *Bellis v. United States*, 417 U.S. 85, 88 (1974), the entity necessarily acts through individuals who have such rights, which requires that the individuals' Fifth Amendment rights be accommodated.   *See Braswell v. United States*, 487 U.S. 99, 117-19 (1988); *accord SEC v. Dunlap*, 253 F.3d 768, 774-75 (4th Cir. 2001).   During discovery, these individuals cannot be forced to implicate themselves in order to provide a defense to the entity in the civil case.   Thus, the Fifth Amendment considerations arise with respect to both Defendants in the civil case.

## II.      A STAY OF THIS ACTION IS THE "APPROPRIATE REMEDY"

Generally, the Court has discretion to stay a civil action pending the outcome of ongoing, actively prosecuted criminal proceedings. *Kordel*, 397 U.S. 12 n.27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action," whether requested by the prosecution or the defense.); *accord AvalonBay Communities, Inc. v. San Jose Water Conservation Corp.*, No. 1:07cv306 (GBL), 2007 U.S. Dist. LEXIS 63773, *3-4 (E.D. Va. Aug. 27, 2007) (discretion); *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 557-58 (E.D. Va. 1995) (same).   In exercising such discretion, judges of this Court generally apply the balancing test stated in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).   *See AvalonBay*, *supra*, at *3-4; *Burns v. Anderson*,

1:02cv1326 (JCC), 2006 U.S. Dist. LEXIS 59150, *9-10 (E.D. Va. Aug. 22, 2006) (applying *Landis*); *Phillips*, 896 F. Supp. at 558 (applying *Landis*). "In applying this balance, courts have held that some attempt must be made to accommodate a civil litigant's Fifth Amendment concerns, and therefore a stay should be granted if one party requests it and the other party will not be substantially prejudiced. Yet, a stay is improper if the opposing party demonstrates that it will result in genuine, substantial prejudice to its interests." *Phillips*, 896 F. Supp. at 558 (footnotes and citations omitted). Other interests may come into play, such as "interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, bad faith, [and] the status of the criminal proceedings." *AvalonBay*, *supra*, at *4. This balancing of factors is made below, and inexorably leads to the conclusion that a stay is warranted here.

   ***Prejudice to the Defendant:***   The first *Landis* factor is the potential prejudice to the defendant. As shown below, both Defendants would be "constitutionally burdened" (*AvalonBay*, *supra*, at *8) if they were forced to defend this civil action while the *Criminal Action* is being actively prosecuted.

   A defendant facing both criminal and civil charges is thrust on the horns of a dilemma: If he fails to assert his Fifth Amendment rights in the civil case, they are waived in the criminal case. *Kordel*, 397 U.S. at 8-9 (failure to assert Fifth Amendment privilege during civil discovery waived that right in parallel criminal action). If he asserts his Fifth Amendment rights in the civil case, the Court may impose an "adverse inference" against him, such as deeming certain facts admitted by silence. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). And even if no adverse inference is imposed, a defendant asserting his Fifth Amendment rights may have been compelled to forsake the use of relevant exculpatory evidence in the civil case. *Phillips*, 896 F. Supp. at 557 (citing *United States v. Rylander*, 460 U.S. 752, 758 (1983)); *accord AvalonBay*,

*supra*, at \*8. Thus, Defendant Kim Dotcom will be "constitutionally burdened" because of the inherent and irreconcilable conflict between his Fifth Amendment right in the *Criminal Action* and his need to defend himself in this civil action.

Prejudice also is visited on Megaupload, Ltd., even though it cannot itself assert a Fifth Amendment right. When responding to discovery in the civil case, it will have to speak through individuals who are actual or potential criminal defendants, such as Defendant Kim Dotcom, which would expose those individuals to self-incrimination were they to testify at a deposition (*AvalonBay*, *supra*, at \*8) or to swear to interrogatory answers (*Kordel*, 397 U.S. at 9). If Defendant Kim Dotcom refuses to testify on behalf of, or answer interrogatories directed to, Defendant Megauplaod Ltd., then an adverse inference may be applied against Megaupload, Ltd., or it simply may be forced to forsake the use of potentially exculpatory evidence. In either event, its rights are "constitutionally burdened." As Judge Lee cogently reasoned: "The Court holds that [corporate and individual defendants] are constitutionally burdened by having either to prepare an adequate civil defense that includes testimony of [the individual defendant], but possibly opens up evidence for future criminal prosecution, or to prepare a civil defense without [the individual defendant's] testimony that will likely be inadequate." *AvalonBay*, *supra*, at \*8. Thus, there would be constitutional prejudice to Defendant Megaupload Ltd., as well.

This prejudice, moreover, is inescapable because the civil and criminal cases involve essentially the same facts. Courts have not hesitated to enter a stay when both the criminal and civil cases arise from the *same facts*. *E.g.*, *Texaco, Inc. v. Borda*, 383 F.2d 607 (3rd Cir. 1967); *Perry v. McGuire*, 36 F.R.D. 272 (S.D.N.Y. 1964); *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*, 14 F.R.D. 333 (E.D. Pa. 1953); *National Discount Corp. v. Holzbaugh*, 13 F.R.D. 236 (E.D. Mich. 1952). Essentially every factual issue in this civil action will also be a

factual issue in the broader *Criminal Action*; indeed, this civil action merely presents a subset of the facts at issue in the *Criminal Action*.  In other words, any testimony or other evidence sought from Defendants in this civil action will likely represent a "link in the chain of evidence" at issue in the *Criminal Action*.  *Hoffman*, 341 U.S. at 486.  Thus, it is impossible to avoid the constitutional prejudice to Defendants.

Absent a stay, prejudice to Defendants is immediate and actual.  As Judge Lee has recognized, "The burden on a party in making incriminating statements weighs more heavily when serious charges have been initiated and the constitutional obligation of a speedy criminal trial could help protect the opposing civil party from a significant delay." *AvalonBay*, *supra*, at *9 (citation omitted).[3]  If the criminal prosecution is still pending and the criminal defendant is being called upon to respond to civil litigation and discovery involving the same facts, the "appropriate remedy would be a protective order postponing civil discovery until termination of the criminal action." *Kordel*, 397 U.S. at 9.  Defendants respectfully submit that the only "appropriate remedy" here would be a stay postponing pleading and civil discovery until the termination of the *Criminal Action*.

Moreover, a central issue in this civil action will be scienter—that is, whether Defendants "knowingly and intentionally" induced infringement by others; "know[ingly]" contributed to the inducement of others; or engaged in "willful, wanton and reckless" unfair competition (Doc. 1,

---

[3]   The constitutional burden weighs even more heavily when the civil action has been commenced by the government, in which case, the Court would be concerned that the civil proceeding may be used to obtain civil discovery beyond what is allowed in a criminal case, or that pendency of the criminal action will fatally undermine the defense of the civil action. *AvalonBay*, *supra*, at *5; *Phillips*, 896 F. Supp. at 558 n.5.  This civil case, while not brought by the government, is brought by an alleged crime victim, whose incentives are aligned with, if not identical to, the government's in the *Criminal Action*.  The Court should be equally skeptical here, and vigilant to ensure that the Plaintiffs are not merely a stalking horse.

*Complaint* ¶¶ 52, 64 & 77).  The Plaintiffs' claims appear to be based on the recent decision in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005), which introduced a new judge-made cause of action for copyright owners against a person "who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement."  Scienter components of these civil actions are inseparable from the conduct:  "One infringes contributorily by *intentionally* inducing or *encouraging* direct infringement, and infringes vicariously by *profiting* from direct infringement while *declining* to exercise a right to stop or limit it."  *Id.* at 930 (emphasis added) (citations omitted).  Given the centrality of scienter to both Plaintiffs' claims and the *Criminal Action*, it would be a gross miscarriage of justice to proceed with the civil litigation while the Defendants' right to defend themselves has been "constitutionally burdened" by the parallel *Criminal Action* based on the same facts.  Unless the civil action is stayed, Defendants' ability to respond to the scienter element of the Plaintiffs' claims in this action will be fatally undermined.

Finally, notwithstanding the presumption of innocence, all of Defendants' assets have been frozen in the *Criminal Action*.  As a result, Defendants cannot presently afford to pay defense counsel, expert witnesses, or e-discovery vendors in this civil action.  That also would constitute a substantial and unfair prejudice to Defendants, were they forced to defend this complex and expensive civil action prior to a resolution of the *Criminal Action*.

***There will be no prejudice to the Plaintiffs:***  The second *Landis* factor is prejudice to the other party.  There will be no substantial prejudice to the Plaintiffs arising from a stay in this case.  The principal forms of prejudice considered by other judges of this Court have included whether there would be an indefinite delay, potential erosion of remedies, and potential loss of evidence.  *AvalonBay*, *supra*, at *10.  None will occur here.

- 11 -

First, there will not be any interminable or indefinite delay.  This Court moves expeditiously in both criminal and civil matters.  While there may be some delay due to extradition proceedings, that is simply part-and-parcel of an international case of this sort.  (Indeed, Plaintiffs themselves have not yet served all the Defendants, either.)   And if the extradition proceedings do not conclude promptly, or if the Defendants are not extradited, the Court may revisit the stay.

Second, Plaintiffs' financial remedies will not be unfairly prejudiced.  At present, the Defendants' assets are frozen and being held by the government for potential restitution to alleged crime victims—including the Plaintiffs.  And should any of the frozen assets now held by courts around the globe be released for Defendants' personal needs or criminal defense legal fees and costs, the release would occur only in adversarial proceedings before a judicial officer.

Third, no critical evidence will be lost during a stay.  To be sure, "[a] party is not entitled to delay resolution of a civil action, even to accommodate her Fifth Amendment interests, if her adversary's case will deteriorate as a result of the stay." *Phillips*, 896 F. Supp. at 557 (lifting stay, *inter alia*, to ensure that evidence will not be lost).  However, as shown above, Plaintiffs are seeking access to evidence in the hands of the government, and Defendants and the government are already cooperating in the *Criminal Action* to preserve potential evidence for use by Plaintiffs (and others) in civil actions.

In short, there will be no unfair prejudice to Plaintiffs.

*Other Factors:*   None of the other factors—"interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, bad faith, [and] the status of the criminal proceedings"— weigh against a stay order.  Interests of non-parties—for example, other copyright owners—are being protected by the asset freeze and evidence preservation efforts in

the *Criminal Action*.   Public interests are found on both sides of the case: respect for constitutional rights, on one side, enforcement of copyright interests, on the other.   While Defendants cast no aspersions on Plaintiffs or their motivations, it cannot be gainsaid that there is a danger of discovery abuse whenever the civil plaintiff is an alleged crime victim and may become a cooperating witness.[4]   In comparison, there is no opportunity for bad faith on the part of the Defendants, who have a constitutional right to a level playing field in both proceedings. Finally, and of primary importance, the criminal proceedings have been commenced and are being actively prosecuted.   In sum the "other factors" do not weigh against a stay of the civil action—instead, they support it.

Accordingly, when balancing the factors, the inescapable conclusion is that the stay in this case should be entered.[5]

---

[4]  The government has already argued to the Court that "[t]estimony and/or documentation from many [copyright owners *qua* "victims"] is likely to be needed in the government's case-in-chief, since [the copyright owners *qua* "victims"] can establish the copyrights involved in the alleged reproduction and distribution by the defendants and their systems."  *Criminal Action*, Doc. 76, *Government Brief* at 10-11.   For example, in Counts Five through Eight of the *Superseding Indictment*, the government has identified time periods during which unspecified copyrighted works, including "motion pictures, television programs, [and] musical recordings," were illegally infringed.   Plaintiffs' claims for infringement cover such works and include all of those time periods (Doc. 1, *Complaint* ¶¶ 6, 7 & 23-41).

[5]  With Plaintiffs' consent, the Court has already extended the time for these Defendants to respond to the *Complaint* (Doc. 13).   Defendants respectfully submit that, if this stay motion is denied, they should be granted an additional extension in which to file and serve their responses until thirty days after the stay is denied.  (If a stay is granted, they will also request an additional extension in which to file and serve their responses until thirty days after the stay is lifted.) There are significant threshold issues of jurisdiction and service that may be contested, as well as extraordinary decisions to make about pleading or moving in response to the *Complaint* on other grounds (such as, making decisions about which allegations can be admitted, denied, or as to which the Fifth Amendment must be asserted in light of the *Criminal Action*).   Defendants are filing a separate emergency motion for that relief.

- 13 -

## CONCLUSION

For the foregoing reasons, Defendants Kim Dotcom and Megaupload Ltd. respectfully submit that an order staying this civil action should be entered..

Dated:  May 10, 2012                               Respectfully submitted,

                                                   /s/ Craig C. Reilly
                                                   Craig C. Reilly, Esq. (VSB # 20942)
                                                   111 Oronoco Street
                                                   Alexandria, Virginia 22314
                                                   TEL (703) 549-5354
                                                   FAX (703) 549-2604
                                                   craig.reilly@ccreillylaw.com

                                                   Ira P. Rothken (pro hac vice pending)
                                                   ROTHKEN LAW FIRM
                                                   3 Hamilton Landing
                                                   Suite 280
                                                   Novato, CA 94949
                                                   (415) 924-4250
                                                   (415) 924-2905 (fax)
                                                   ira@techfirm.net

                                                   *Counsel for Defendants Kim Dotcom and
                                                   Megaupload, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 10, 2012, the foregoing pleading or paper was filed and served electronically by the Court's CM/ECF system upon all parties:

William Clifton Holmes
DUNLAP, GRUBB & WEAVER PLLC
199 Liberty St SW
Leesburg, VA 20175
703-777-7319
Fax: 703-777-3656
Email: cholmes@dglegal.com
*Counsel for Plaintiffs*

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for Defendants Kim Dotcom and*
*Megaupload, Ltd.*