IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| MICROHITS, INC., *et al.*, | ) ) |
| Plaintiffs, | ) ) ) Civil Action No. 12cv327 (LO) |
| v. | ) ) |
| MEGAUPLOAD, LTD., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO STAY THE INSTANT PROCEEDINGS**

Plaintiffs Microhits, Inc. and Valcom, Inc. hereby respectfully file the instant Opposition to Defendants MegaUpload Limited and Kim Doctom's Motion to Stay the instant proceedings pending resolution of the criminal matter captioned as *United States v. Dotcom, et al.*, 12cr03 (E.D. Va.).  For the reasons set forth below, Defendants' Motion should be denied.

**DISCUSSION**

In their Complaint, Plaintiffs have alleged that Defendants MegaUpload Limited, Kim Dotcom (aka Kim Schmitz), and Mathias Ortmann engaged in inducement of copyright infringement and contributory copyright infringement in violation of the U.S. Copyright Act, and, further, engaged in unfair competition in violation of Virginia state law.[1]  *See* Dkt. No. 1. As alleged in Plaintiffs' Complaint, until on or about August 14, 2011, Dotcom served as the Chief Executive Officer of MegaUpload Limited.  *See* Dkt. No. 1, ¶ 10.  As further alleged in

---

[1] Defendants MegaUpload, Limited and Kim Dotcom were served with summonses and copies of Plaintiffs' Complaint on April 10, 2012 and April 13, 2012, respectively. Dkt. Nos. 9, 11. A third Defendant, Mathias Ortmann, was recently served on May 7, 2012.  Plaintiffs will imminently file with the Court the proof of service reflecting Mr. Ortmann's service upon receipt of the original service papers from New Zealand.  At this time it does not appear likely that Plaintiffs will be successful in effecting service on Defendant Vestor Limited.

Plaintiffs' Complaint, Ortmann was the Chief Technical Officer, co-founder, and a director of MegaUpload Limited. *Id.* ¶ 11. The central premise for Defendants' Motion requesting a stay of this case is a false one in that it rests on the notion that any or all of the Defendants actually possess rights under the Fifth Amendment to the United States Constitution. None of the Defendants do in fact possess such rights, and for that reason, Defendants' Motion should be denied. Further, grant of Defendants' Motion would unduly prejudice Plaintiffs by creating a risk of loss of evidence that Plaintiffs would otherwise seek to utilize in litigating their claims.

A district court has the discretion to issue a stay such as that requested by the Defendants, upon consideration of the particular circumstances of the case. *Securities and Exchange Commission, v. Dresser*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("The Constitution…does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders[.]") (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)). The Court is to exercise such discretion in granting a stay when the "interests of justice" "seem[] to *require*" such course of action. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (emphasis added). The District Court should decline to exercise its discretion so as to grant the requested stay as to Defendants Dotcom, Ortmann, and MegaUpload Limited in that the interests of justice certainly do not "require" such course of action.

I. **The Defendants' "Constitutional" Argument Urging Stay of this Action Is Unavailing.**

Defendants' principle argument in support of their request that this Court exercise its discretion so as to stay the instant pending civil matter is that allowing the instant civil matter to proceed would "'constitutionally burden' Defendants' rights." Dkt. No. 17 at 6. Yet the

2

Defendants have no "constitutional rights" under the United States Constitution, and thus there is no "burden" on any such rights through the continued litigation of the instant proceeding.

The Fifth Amendment to the U.S. Constitution provides (as pertinent to the arguments raised by Defendants):

> No person…shall be compelled in any criminal case to be a witness against himself[.]

U.S. CONST. amend. V.  Defendants contend that their participation in the instant proceeding could prompt them to incriminate themselves with respect to the separately pending *United States v. Dotcom, et al.*, 12cr03 (E.D. Va.) proceedings in violation of their Fifth Amendment rights.  *E.g.*, Defs.' Br. at 7 (arguing that "Defendant Kim Dotcom would be entitled to assert his Fifth Amendment privilege at several stages in this case.").  This contention is incorrect.  None of Defendants Dotcom, Ortmann, or MegaUpload Limited possess rights under the Fifth Amendment of the U.S. Constitution.  For this reason, Defendants' assertion that those "rights" provide a basis for postponing the instant proceeding is unavailing.

A. **Defendant MegaUpload Limited Does Not Possess Constitutional Rights Under the Fifth Amendment to the U.S. Constitution.**

A corporation such as MegaUpload Limited does not possess Fifth Amendment rights.  *Wilson v. United States*, 221 U.S. 361, 383 (1911); *see also United States v. White,* 322 U.S. 694, 701 (1944).  This is so because "the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public.  It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter.  Its powers are limited by law."  *Wilson*, 221 U.S. at 383.  *Ipso facto*, there is no "constitutional burden" to continuance of the instant proceedings as against Defendant MegaUpload Limited; MegaUpload Limited does not possess any Fifth Amendment rights under the U.S. Constitution.

3

Defendants acknowledge that "Defendant Megaupload, Ltd., as a 'collective entity,' may not have a Fifth Amendment right to assert," but argues that MegaUpload "necessarily acts through individuals who have such rights." Defs.' Br. at 7. However, as discussed immediately below, this contention is incorrect; the two "individuals" who have been named as Defendants to this action, Kim Dotcom and Mathias Ortmann, do not possess such rights.

B.  **Defendants Kim Dotcom and Mathias Ortmann Do Not Possess Constitutional Rights Under the Fifth Amendment to the U.S. Constitution.**

Individual Defendants Kim Dotcom and Mathias Ortmann likewise do not possess rights under the Fifth Amendment to the U.S. Constitution. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States.") (citing *Johnson v. Eisentrager*, 339 U.S. 763 (1950)); *see also Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.*, 820 F.2d 1359, 1363 (4th Cit. 1987) ("[t]he Constitution does not extend its guarantees to nonresident aliens living outside the United States."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *Verdugo-Urquidez* and *Eisentrager* and noting that "[i]t is well established that" Fifth Amendment protections "are unavailable to aliens outside our geographic borders").

As alleged, Defendants Dotcom and Ortmann are citizens of Finland and Germany and Germany, respectively, Dkt. No. 1, ¶¶ 10, 11,[2] and are thereby "aliens." Each is currently "beyond our territory" (in New Zealand), *i.e.*, outside the United States. Accordingly, each is therefore not "entitled to Fifth Amendment rights" under the U.S. Constitution. *Verdugo-Urquidez*, 494 U.S. at 269; *see also Territory of Hawaii v. Mankichi*, 190 U.S. 197, 218-219 (1903) (White, J. and McKenna, J., concurring) (concurring with the majority's dismissal of a

---

[2] Plaintiffs do not understand Defendants to deny these allegations (as to Defendants' citizenship).

4

Japanese national's habeas petition upon his conviction for manslaughter in Hawaii in 1899 absent a grand jury or unanimous jury finding of guilt, and noting that an "additional ground" supporting such disposition of the Japanese national's habeas petition was that "as a consequence of the relation which the Hawaiian islands occupied toward the United States, growing out of the resolution of annexation, the provisions of the 5th and 6th Amendments of the Constitution concerning grand and petit juries were not applicable to that territory[.]"). The situation of Defendants Dotcom and Ortmann, as extraterritorial aliens, is such that they simply do not have any Fifth Amendment rights to invoke so as to thwart prompt litigation of the instant civil matter.[3]

Defendants seek to use their decision to fight extradition from New Zealand as both a shield (against criminal liability) and a sword (against facing the instant civil matter). Yet there simply is no basis either in the U.S. Constitution or in civil jurisprudence to permit the Defendants to create such a "win-win" scenario and doubly profit in this fashion from their own, voluntary decision to contest extradition. *Because* Defendants Dotcom and Ortmann have elected to oppose extradition to the United States, the Defendants are, and remain-- and will remain during the pendency of their extradition proceedings-- extraterritorial aliens. In other words, the precipitating factual development ostensibly creating a need for the delay in the instant civil proceedings is one exclusively within the ambit of control of the Defendants in the

---

[3] Though Defendants cite to *Lefkowitz v. Turley*, 414 U.S. 70, 77-78 (1973), for the proposition that "[t]he Fifth Amendment privilege may be asserted in 'any' proceeding, 'civil or criminal … where the answers might incriminate [an individual] in future criminal proceedings[,]'" Defs.' Br. at 6, this citation is wholly inapposite on the instant facts; Defendants, extraterritorial aliens, simply possess no such privilege to "assert." As stated by Justice Kennedy, "the Constitution does not create, nor do general principles of law create, any juridical relation between our country and some undefined, limitless class of noncitizens who are beyond our territory." *Verdugo-Urquidez*, 494 U.S. at 275 (Kennedy, J., concurring).

12cr03 criminal proceedings.[4]  Though Mr. Dotcom has decried his criminal prosecution as a "corrupt" proceeding,[5] it has been his decision and his alone to decline to face the charges handed down by a grand jury in those criminal proceedings.  Having made that decision, this Court need not even engage in the "balancing" of interests urged by Defendants; Defendants do not possess Fifth Amendment rights.  Defendants are in no position to assert that this Court should trammel the right of civil plaintiffs (and U.S. citizens) Microhits and Valcom to have their case heard in a timely fashion based on a non-existent right that they do not possess.

>    II.    **Plaintiffs' Case Will Deteriorate as a Result of the Stay.**

This is not a case where the pending criminal matter is expected to be resolved within a limited time period.  Quite the opposite, it could take several years for the criminal case to resolve.  As the Defendants are forced to acknowledge, "[a] party is not entitled to delay resolution of a civil action, even to accommodate her Fifth Amendment interests, if her adversary's case will deteriorate as a result of the stay."  *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 557-58 (E.D. Va. 1995) (Ellis, J.).  Such risk is palpable in the instant matter.  Recent history advises that the total length of time until the extradition of Defendants Dotcom and Ortmann is resolved could span three years or more into the future.

---

[4] Though Defendants *could* attain a privilege against self-incrimination if they were to reverse course and elect to face the criminal charges against them, *see, e.g., Verdugo-Urquidez* at 1060 (Fifth Amendment privilege against self-incrimination "is a fundamental *trial right* of criminal defendants") (emphasis added), *Wong Wing v. United States*, 163 U.S. 228, 230 (1896), their decision to contest extradition comes at the cost of obtaining those very same Fifth Amendment rights which they strive to invoke with respect to the instant proceedings.  The Defendants' Motion is simply unripe in that the condition precedent for invocation of Defendants' Fifth Amendment rights (their setting foot on U.S. soil) simply has not occurred and-- as this Court has recognized (at hearing in the 12cr03 matter on April 13, 2012)-- may never occur.

[5] *See* "Kim Dotcom Lashes Out Against "Corrupt US Government," Apr. 20, 2012 http://torrentfreak.com/kim-dotcom-lashes-out-against-corrupt-us-government-120420/ (last visited May 19, 2012).

In a recent instance in which the U.S. sought to extradite a New Zealand citizen, the process spanned thirty-eight months, and the indicted individual was never in fact extradited to the United States.  *See* "US will 'struggle' to extradite Kim Dotcom," Feb. 14, 2012, http://www.3news.co.nz/US-will-struggle-to-extradite-Kim-Dotcom/tabid/423/articleID/242681/Default.aspx (*last visited* May 18, 2012).  In October 1999, New Zealand citizen Bob Cullinane was indicted in the United States on charges of racketeering, visa fraud, alien smuggling and harbouring.  *Id.*; *see also* "Trucker appeals removal," Aug. 4, 2001), http://www.nzherald.co.nz/nz/news/article.cfm?c_id=1&objectid=203825 (last visited May 18, 2012).  The disposition of the extradition sought as to Mr. Cullinane was not resolved until December 2002 upon decision of the New Zealand Court of Appeal.  *See* http://www.ipsofactoj.com/international/2004/Part05/int2004(5)-012.htm (last visited May 19, 2012).

The instant extradition process against Mr. Dotcom and Mr. Ortmann has spanned four months to date, and, to Plaintiffs' understanding, the next scheduled hearing in New Zealand as part of that process is not scheduled to occur until September 2012.  Given Defendants' right to appeal any adverse extradition determination made by the lower court in New Zealand, there is no end in sight to those proceedings, and no reason to believe the proceedings against Mr. Dotcom and Mr. Ortmann will set foot on American soil (voluntarily) for years to come.

A stay could result in crucial evidence being lost in the form of lost testimony from the Defendants themselves, in that, presuming they are not extradited, immediately after conclusion of the pending extradition proceedings, they may abscond to parts unknown.  The ports of call of

7

Defendant Dotcom, who has taken at least three different names and holds a passport in each one,[6] bear recounting. He has, in sequence:

- Moved from Germany, (after being convicted there of computer fraud and handling stolen goods[7] and stock manipulation[8]), to

- Hong Kong, where, after being convicted of eight stock trading offenses there),[9] and then moved to

- New Zealand, where, according to New Zealand authorities, after his arrest on the charges lodged by the United States in the 12cr03 matter, one of his first visitors in prison in New Zealand was a known document forger.[10]

Where Defendant Dotcom (who was deemed a "serious flight risk" by the High Court in New Zealand)[11] will go at the conclusion of the instant criminal extradition proceedings, if

---

[6] *See* "Kim Dotcom wins bail in fight against U.S. extradition," Feb. 22, 2012, http://www.reuters.com/article/2012/02/22/us-internet-piracy-megaupload-idUSTRE81L09L20120222 (last visited May 19, 2012).

[7] *See* Will Shanklin, "A closer look at Kim Dotcom, the larger-than-life founder of Megaupload," Jan. 20, 2012, http://www.geek.com/articles/geek-pick/a-closer-look-at-kim-dotcom-the-larger-than-life-founder-of-megaupload-20120120/ (last visited May 21, 2012).

[8] *See* "Kimble/Schmitz gets 20 months suspended sentence," May 28, 2002, http://www.theregister.co.uk/2002/05/28/kimble_schmitz_gets_20_months/ (last visited May 19, 2012).

9 *See* "Dotcom: Immigration NZ unaware of Hong Kong court action," March 14, 2012, http://www.nzherald.co.nz/business/news/article.cfm?c_id=3&objectid=10792093 (last visited May 19, 2012).

[10] *See* "Megaupload: Kim Dotcom describes his strange prison encounters in New Zealand court," Feb. 3, 2012, http://www.telegraph.co.uk/technology/internet/9058686/Megaupload-Kim-Dotcom-describes-his-strange-prison-encounters-in-New-Zealand-court.html (last visited May 19, 2012).

unsuccessful, is difficult, at best, to predict. So long as Mr. Dotcom and Mr. Ortmann are under house arrest, at least it is known where they can be found (and deposed). Should the Court grant a stay, there is literally no telling where in the world either will be located (or if they can be located) if the United States' attempt to extradite each is unsuccessful.

While efforts are underway to preserve the vast quantities of data concerning usage on the megaupload.com website that is stored on servers maintained by Carpathia Hosting of Ashburn, VA in connection with the 12cr03 matter, there is no guarantee what will become of that data once the 12cr03 criminal proceedings have concluded. Potential degradation of the quality and even availability of that data, over a three-plus year period, is a risk that even Defendants would be forced to acknowledge. Potential security breaches, technological failures, and even natural disasters could imperil the availability of now-available data over a three-plus year period.[12]

This case bears significant similarities to the case of *In re Phillips, Beckwith & Hall*. In that case, employees of a law firm that was being investigated as a potential knowing recipient of criminal proceeds sought protection in this District Court from having to render testimony

---

[11] *See* "Customs tip ends Dotcom bail bid," Jan. 26, 2012, http://www.nzherald.co.nz/nz/news/article.cfm?c_id=1&objectid=10781206 (last visited May 19, 2012).

[12] Here, not only will Plaintiffs' case deteriorate as a result of a stay, Plaintiffs' ability to recover on any judgment could be impeded if the case were stayed as long as Defendants propose (for as many as several years). Pursuant to New Zealand law, the freeze on Defendants' assets is not indefinite, and indeed, cannot extend beyond January 2012 without re-application by the New Zealand authorities. *See* Criminal Proceeds Recovery Act of New Zealand (2009), § 37(1), *available at* http://www.legislation.govt.nz/act/public/2009/0008/latest/DLM1451160.html?search=ts_act_land+transport+act+1998_resel&p=1 (last visited May 19, 2012). To the extent that a) this Court were to grant Defendants' Stay Motion, and b) the existing freeze on Defendants' assets were to expire or otherwise be lifted in the intervening period, Defendants could disperse their assets far and wide, and conceivably even beyond the reach of the United States and civil claimants.

> They may either testify in support of their claim to the forfeited funds and thereby waive their Fifth Amendment rights, or alternatively, remain silent in the forfeiture proceeding, thereby preserving their Fifth Amendment rights but jeopardizing, by their silence, the firm's position in the forfeiture proceeding. To avoid this dilemma, the Phillips firm asks for a stay of the forfeiture proceeding, a measure the government opposes.

*In re Phillips, Beckwith & Hall*, 896 F. Supp. at 555. The District Court concluded that, insofar as the government had "presented several significant ways in which it will be prejudiced by" a continued stay, the Court would not continue a stay previously granted as to the civil proceedings. *Id.* at 558. The factors cited by the District Court included that the "public have an interest in proper enforcement of the forfeiture laws," the government's interest in "moving ahead promptly with [its civil forfeiture] case," and the potential "impair[ment to] the government's interests by preventing it from brining a common-law conversion action against the Phillips firm." *Id.* at 558-559. Crucial to the Court's conclusion that the government could be impaired in "moving ahead promptly with its case" was the Court's determination that the "tracing trail [of money that flowed through the Phillips law firm] becomes colder every day." *Id.* at 559. Similarly, here, the potential degradation of data and witness memory (and even availability) threatens to significantly impair Plaintiffs' case, not to speak of Plaintiffs' ability to recover upon a finding of liability on the part of Defendants.

Again, the reason for the potential delay to the instant proceedings bears emphasis: it is the refusal of the Defendants to this matter to participate in the 12cr03 criminal proceedings. An Order by this Court allowing these Defendants to avoid facing the instant civil proceeding out of deference to their desire to avoid the 12cr03 criminal proceedings would stand basic principles of justice and Due Process on their head.

## CONCLUSION

Defendants argue that allowing the instant civil matter to proceed would "'constitutionally burden' Defendants' rights." Dkt. No. 17 at 6. Yet Defendants have no constitutional rights under the Fifth Amendment to the U.S. Constitution. Thus, Defendants' Motion to Stay should be denied, paving the way for Defendants to answer Plaintiffs' Complaint on or before June 22, 2012.

Respectfully submitted,

/s/
Thomas M. Dunlap, Esq.
Virginia Bar No. 44016
W. Clifton Holmes, Esq.
Virginia Bar No. 78157
David Ludwig, Esq.
Virginia Bar No. 73157
Dunlap, Grubb & Weaver PLLC
199 Liberty St, SW
Leesburg, VA 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dglegal.com
cholmes@dglegal.com
dludwig@dglegal.com

Counsel for Plaintiffs Microhits, Inc. and Valcom, Inc.

May 21, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2012, I caused copies of the foregoing to be served upon the following via the CM/ECF system:

>Craig C. Reilly, Esq. (VSB # 20942)
>111 Oronoco Street
>Alexandria, Virginia 22314
>TEL (703) 549-5354
>FAX (703) 549-2604
>craig.reilly@ccreillylaw.com
>
>Ira P. Rothken, Esq.
>ROTHKEN LAW FIRM
>3 Hamilton Landing
>Suite 280
>Novato, CA 94949
>(415) 924-4250
>(415) 924-2905 (fax)
>ira@techfirm.net
>*Counsel for Defendants Kim Dotcom and Megaupload, Ltd.*

>_____/s/_____
>W. Clifton Holmes