IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

MICROHITS, INC., )
   *et al.*, )
               Plaintiffs, )
               ) Civil Action No. 12cv327 (LO)
        v. )
 )
MEGAUPLOAD, LTD., )
   *et al.*, )
              Defendants. )
 )

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR RECONSIDERATION**

Plaintiffs Microhits, Inc. and Valcom, Inc. ("Plaintiffs") hereby respectfully submit the instant Reply brief in support of their June 4, 2012 Motion for Reconsideration (Dkt. No. 32). For the reasons set forth in Plaintiffs' brief in chief and below, Plaintiffs' Motion should be granted.

**DISCUSSION**

I. **Extraterritorial Aliens Solely Obtain Fifth Amendment Rights Once on U.S. Soil.**

Defendants' briefing on their Motion to Stay (Dkt. Nos. 17, 30, 34) ignores the plain bar to their requested relief: the U.S. Supreme Court has held, clearly and repeatedly, that it is only once an extraterritorial alien has ***set foot on U.S. soil*** that he or she becomes invested with rights under the Fifth Amendment to the U.S. Constitution. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n. 5 (1953) (it is only "once an alien lawfully enters and resides in this country [that] he becomes invested with . . . rights . . . protected by . . . the Fifth Amendment[ ] and by the due process clause of the Fourteenth Amendment") (internal quotation marks omitted). This rule is exception-free. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("aliens receive

constitutional protections **_when they have come within the territory of the United States_** _and_ developed substantial connections with this country.") (emphasis added). The instant defendants simply have not "come within the territory of the United States." (*Verdugo-Urquidez*). Therefore, they have no claim to any Fifth Amendment "rights" of any kind whatsoever.[1] Apart from U.S. Supreme Court precedent, this rather straightforward conclusion is further dictated by binding Fourth Circuit precedent. *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.*, 820 F.2d 1359, 1363 (4th Cit. 1987).[2] There is simply no basis to stay the instant action.[3]

### II. This Court Should Decline to Follow *United States v. Bin Laden* in Derogation of Binding Supreme Court and Fourth Circuit Precedent.

For the proposition that the Defendants do possess Fifth Amendment rights, Defendants rely chiefly on a 2001 decision by the District Court for the Southern District of New York (*United States v. Bin Laden*, 132 F. Supp. 2d 168 (S.D.N.Y. 2001)). Indeed, stripped bare, it

---

[1] Again, the Supreme Court has only narrowed the scope of *Verdugo-Urquidez* in one limited instance, namely, *Boumediene v. Bush*, 553 U.S. 723, 726 (2008), wherein the Court recognized a limited constitutional right on the part of an extraterritorial alien held in U.S. custody in territory subject to "absolute" and "indefinite" U.S. control to file a habeas petition pursuant to Article I, Section 9, clause 2 of the U.S. Constitution. *Id.* at 726.

[2] The Defendants seek weakly to distinguish *Vancouver Women's Health* as a decision that "does not address the applicability of the Fifth Amendment self-incrimination clause when an alien is being prosecuted in the United States." Dkt. No. 34 at 5. To the contrary, *Vancouver Women's Health* does address the applicability of the Fifth Amendment to extraterritorial aliens; the Fourth Circuit expressly held that "[t]he Constitution does not extend its guarantees to nonresident aliens living outside the United States." *Id.* at 1363. There is no daylight in the language of *Vancouver Women's Health* that Defendants could seek to parse so as to supply a ground for a finding that the individual Defendants to this case *currently* possess Fifth Amendment rights.

[3] Defendants' strained parsing of the facts and context of the February 26, 2002 memorandum of Jay S. Bybee of the Department of Justice, in which Mr. Bybee opined that it is a "well-established fact that the Fifth Amendment does not confer rights upon aliens outside the sovereign territory of the United States[,]" is a pallid effort at misdirection on the part of Defendants. The Supreme Court and Fourth Circuit precedent on the issue at hand (whether these Defendants possess Fifth Amendment rights of any kind) is abundant and clear.

becomes clear that Defendants' stay request relies *in toto* on the *Bin Laden* decision. *See* Dkt. No. 34 at 6 (citing the *Bin Laden* court's holding that "foreign nationals interrogated overseas [before trial] but tried in the civilian courts of the United States are protected by the Fifth Amendment's self-incrimination clause.").[4] Judge Sand's principal holding in *Bin Laden* was that FBI agents sent to Afghanistan to interrogate captured members of the al Qaeda network were required to abide by Fifth Amendment limitations on questioning during the course of their interrogations. *See Bin Laden*, 132 F. Supp. 2d at 183.

*Bin Laden* was palpably incorrect as a straightforward matter of constitutional law. The crux of Judge Sand's opinion in *Bin Laden* hinged on the Judge's observation that:

> The crucial phrase [in the Fifth Amendment] is "no person" and it neither denotes nor connotes any limitation in scope, in marked contrast to the use of "the people" in most of the other Amendments contained within the Bill of Rights.

*Bin Laden*, 132 F. Supp. 2d at 183. But this flighty reasoning (which is precisely mirrored in Defendants' briefing in support of their Motion to Stay, *see* Dkt. No. 30 at 4) has been rejected by the Supreme Court itself as a basis for extending the ambit of the Fifth Amendment beyond the United States' borders, not just once, but repeatedly, and expressly so. As set forth by the Supreme Court in the *Verdugo-Urquidez* decision:

> "Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. None of the learned commentators on our Constitution has even hinted at it. The practice of every modern government is opposed to it."

---

[4] Defendants' assertion that Bin Laden was "affirmed sub nom[ine]" by the Second Circuit in *In re Terrorist Bombings*, 552 F.3d 177, 201 (2d Cir. 2008), Dkt. No. 34 at 6, is wishful thinking. In *In re Terrorist Bombings*, the Second Circuit merely summarized that the Supreme Court had routinely "held that the Fifth Amendment's right to due process of law applies equally to U.S. citizens and foreign nationals *present in the United States*." *See id.*, 552 F.3d at 200-201(emphasis added). Thus, even Defendants' own citations undercut their arguments.

3

> ***If such is true of the Fifth Amendment, which speaks in the relatively universal term of 'person,' it would seem even more true with respect to the Fourth Amendment, which applies only to 'the people.'***

*Verdugo-Urquidez*, 494 U.S. at 269 (quoting *Johnson v. Eisentrager*, 339 U.S. 763, 784-785 (1950) (emphasis added).

Thus, *Bin Laden* conflicts with *Verdugo-Urquidez*, where the Supreme Court held that a Mexican citizen whose residence in Mexico was searched by agents of the United States Drug Enforcement Administration could not assert a claim under the Fourth Amendment to the U.S. Constitution. *Verdugo-Urquidez*, 494 U.S. at 269. Second, *Bin Laden* was in any event squarely superseded by *Zadvydas v. Davis*, 533 U.S. 678 (2001), which noted that "[i]t is well established that" Fifth Amendment protections "are unavailable to aliens outside our geographic borders." *Id.* at 693 (summarizing *Verdugo-Urquidez* as a case holding that "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the U.S.]."). Third, *Bin Laden* has been rejected when held up to the light of clear day by other courts. Considering *Bin Laden* just one year after the decision's issuance, Magistrate Judge Bobrick of the District Court for the Northern District of Illinois had no hesitation in declining to follow the reasoning of Judge Sand. *Bear Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679 (N.D. Ill. 2002). In *Bear Stearns & Co.*, Magistrate Judge Bobrick considered the claim of a citizen and resident of the Netherlands that the Fifth Amendment shielded his production of documents in civil litigation brought by the plaintiff, a U.S.-based bank, alleging that the defendant induced a third party to make false representations to another third party. Magistrate Judge Bobrick discussed the *Bin Laden* decision at length but had no qualms in rejecting it, concluding:

> There is nothing to suggest he [defendant] is a resident alien here [in the United States]— although he may be one of Canada. *We*

4

> *fail to find it self-evident that the Fifth Amendment's privilege against self-incrimination is available to non-resident aliens.*

*Bear Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679 (N.D. Ill. 2002) (emphasis added). In short, the decision of Judge Sand in *Bin Laden* was so aberrant and baseless constitutionally that literally not a single court has followed its breathtaking holding on the Fifth Amendment issue presented.

The *Bin Laden* court simply made up its own reasoning on the fly as it went along, in complete derogation of Supreme Court precedent. The same is true of Defendants' Motion. The bizarre *Bin Laden* decision certainly is not the precedent of this Circuit. *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.*, 820 F.2d 1359 (4th Cit. 1987). *Vancouver Women's Health* is exception free; the Fourth Circuit held: "[t]he Constitution does not extend its guarantees to nonresident aliens living outside the United States." *Id.* at 1363. Thus, this Court could only rely on *Bin Laden* and the protections purportedly extended by the *Bin Laden* court to extraterritorial aliens to the extent that the Court were to ignore *Vancouver Women's Health*, as incorrectly urged by the Defendants.

  III. **Federal Rule 60 Governs Disposition of Plaintiffs' Motion, But Relief is Appropriate Under Rule 54 In Any Event.**

Defendants are incorrect in urging that the Court need grant Plaintiffs' Motion pursuant to Federal Rule 54(b) as opposed to Federal Rule 60(b). This District Court recently adjudicated a party's Motion for Reconsideration pursuant to Rule 60(b) wherein the order at issue was not a "final judgment," but rather an interlocutory order-- a denial of a defendant's motion to dismiss a civil complaint on jurisdictional grounds. *Anderson v. LeGrand, et al.*, 2012 U.S. Dist. LEXIS 20523 (Feb. 12, 2012) (granting defendants' motion for reconsideration) (Brinkema, J.).[5]

---

[5] The undersigned counsel was counsel of record for the Defendants in the *LeGrand* case.

5

Further, with respect to the instant matter, although the Court has invited the parties to re-brief the pertinent issues with the Court on 180 day intervals, the effect of the stay already entered, if renewed (and on 180 day intervals) gives rise to the spectre of a permanent injunction against plaintiffs' action; the Supreme Court has recognized that a party may pursue relief from a permanent injunction under the auspices of Rule 60(b). *Agostini v. Felton*, 521 U.S. 203, 209 (1997).

As Defendants acknowledge, regardless of whether the Court rules upon Plaintiffs' Motion for Reconsideration under the rubric of Rule 60 or Rule 54, grant of Plaintiffs' Motion is entrusted to the Court's discretion. *Compare Square Const. Co. v. Washington Metropolitan Area Transit Authority*, 657 F.2d 68, 71 (4th Cir. 1981), *with American Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 515 (4th Cir. 2003). In that Defendants' request for relief is supported neither by the U.S. Constitution nor the dispositive case law, grant of Plaintiffs' Motion for Reconsideration is appropriate.

### IV.     **Federal Rule 1 and Local Rule 16(B) Support Plaintiffs' Motion.**

As noted in Plaintiff's brief in chief in support of their Motion, Plaintiffs' Motion is supported by Federal Rule 1. Dkt. No. 32 at 3. Plaintiffs' Motion is moreover supported by Local Rule 16(B). *See* L.R. 16(B) ("In all other civil actions, as promptly as possible after a complaint or notice of removal has been filed, the Court shall schedule an initial pretrial conference to be conducted in accordance with Fed. R. Civ. P. 16(b)."). This Court's grant of the Defendants' Motion to Stay, even for six months, subjects Plaintiffs to an unjustified delay in the resolution of their case that more than doubles the typical time to resolution of a case filed in this District. *See* Administrative Office of the U.S. Courts, Federal Court Management Statistics, *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx. All the while, the Defendants may be actively planning to disperse their assets to untraceable

locations around the globe the moment it becomes clear they will not be extradited to the Untied States (and they do not deny that they plan to so disperse such assets).

### V. **The Precedent Urged by the Defendants is Dangerous.**

The precedent urged by Defendants, apart from failing to find support in the U.S. Constitution and the dispositive case law, is simply dangerous.  In January 1996, Khalid Sheikh Mohammed was indicted in the U.S. District Court for the Southern District of New York.  *See* "Khalid Shaikh Mohammed: life of terror," *available at* http://edition.cnn.com/2003/WORLD/asiapcf/south/03/02/mohammed.biog/.  In March 2003, Mohammed was detained by U.S. authorities in Pakistan and thereafter was held in several overseas CIA prisons before being transferred to Guantanamo Bay, Cuba in 2006.  *See* Khalid Sheikh Mohammed Makes First Court Appearance in 3 Years, *available at* http://www.pbs.org/newshour/bb/military/jan-june12/guantanamo1_05-07.html.  While in U.S. custody, Mohammed reportedly confessed to dozens of crimes during a 2006 hearing at Guantanamo Bay, including the crime for which Mohammed was criminally indicted in the United States in 1996 (planning and surveillance in a 1995 plan to bomb twelve American passenger jets).  *See* "Al Qaeda Chief Khalid Sheikh Mohammed Confesses to Planning Sept. 11, Gitmo Transcript Shows," *available at* http://www.foxnews.com/story/0,2933,258817,00.html.  Mohammed was interrogated both at overseas prisons and at Guantanamo Bay, including through use of the so-called "waterboarding" technique.  *See* "'I was responsible for 9/11, from A to Z' - a confession from Guantánamo Bay," *available at* http://www.guardian.co.uk/world/2007/mar/15/alqaida.september11. Such interrogations of Mohammed apparently proceeded without reference to Mohammed's supposed "Fifth Amendment rights"— which is to say, without adherence to the aberrant *United*

7

*States v. Bin Laden* (S.D.N.Y. 2001) decision— and rightfully so; Mohammed, a non-U.S. national, simply possessed no Fifth Amendment rights while situated outside the sovereign territory of the United States.[6] Just as with the instant Defendants, the only juncture at which Khalid Sheikh Mohammed would stand to attain rights under the Fifth Amendment to the U.S. Constitution is to the extent he ever sets foot *on U.S. soil* for criminal trial. *Verdugo-Urquidez*, 494 U.S. at 1060 (the Fifth Amendment privilege against self-incrimination "is a fundamental *trial right* of criminal defendants") (emphasis added). A ruling that an extraterritorial alien who has not set foot on U.S. soil possesses Fifth Amendment rights merely due to the fact of his or her indictment would be reckless and unfounded under basic principles of constitutional law.[7]

## CONCLUSION

This Court should reject Defendants' request that the Defendants be permitted to avoid, for months and years at a time, civil liability for their actions. Defendants invite this Court to set new and dangerous precedent not supported by the U.S. Constitution or the case law. This Court should reject the invitation, and emphatically so. Defendants' Motion for Stay should be denied, without prejudice to their ability to re-file their Motion should they actually be extradited to the United States. In the alternative, Plaintiffs respectfully request that the Court certify its May 31, 2012 Order for interlocutory appeal.

---

[6] John Yoo, WAR BY OTHER MEANS: AN INSIDER'S ACCOUNT OF THE WAR ON TERROR 152 (2006) ("The Fifth Amendment's right to remain silent...applies only in the criminal justice system.").

[7] Defendants, once again missing the point, urge in their Opposition brief that Plaintiffs have ostensibly failed to "show[] that [] manifest injustice will result from the [Court's] stay." Dkt. No. 34 at 7. Though Plaintiffs have made out a clear showing of both actualized and future prejudice, Plaintiffs are not even required to make any such showing insofar as Defendants simply do not possess Fifth Amendment rights. Plaintiffs are simply entitled to a timely trial date consistent with, *inter alia*, Federal Rule 1 and Local Rule 16(B).

Respectfully submitted,

_____/s/_____
Thomas M. Dunlap, Esq.
Virginia Bar No. 44016
W. Clifton Holmes, Esq.
Virginia Bar No. 78157
David Ludwig, Esq.
Virginia Bar No. 73157
Dunlap, Grubb & Weaver PLLC
199 Liberty St, SW
Leesburg, VA 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dglegal.com
cholmes@dglegal.com
dludwig@dglegal.com

Counsel for Plaintiffs Microhits, Inc. and Valcom, Inc.

June 14, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of June, 2012, I caused copies of the foregoing to be served upon the following via the CM/ECF system:

>Craig C. Reilly, Esq. (VSB # 20942)
>111 Oronoco Street
>Alexandria, Virginia 22314
>TEL (703) 549-5354
>FAX (703) 549-2604
>craig.reilly@ccreillylaw.com
>
>Ira P. Rothken, Esq.
>ROTHKEN LAW FIRM
>3 Hamilton Landing
>Suite 280
>Novato, CA 94949
>(415) 924-4250
>(415) 924-2905 (fax)
>ira@techfirm.net
>*Counsel for Defendants Kim Dotcom and Megaupload, Ltd.*

>_____/s/_____
>W. Clifton Holmes