UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICROHITS, INC., *et al.*, *Plaintiffs* v. MEGAUPLOAD, LTD., *et al.*, *Defendants* | No. 1:12-cv-327 (LO/IDD) |

**STATUS REPORT OF DEFENDANTS KIM DOTCOM AND MEGAUPLOAD LTD. IN SUPPORT OF THE CONTINUATION OF THE STAY PENDING THE PARALLEL CRIMINAL PROSECUTION**

In this civil action, Defendants are being sued for indirect or secondary copyright infringement by Plaintiffs, who hold the copyrights to certain works. These Defendants, and others, also have been indicted for criminal copyright infringement and other alleged crimes arising out of the same alleged activity. *United States v. Kim Dotcom, et al.*, No. 1:12-cr-00003-LO (E.D. Va. filed Jan. 5, 2012) ("*Criminal Action*"). The gist of the scheme alleged in the *Criminal Action* is a conspiracy to commit criminal copyright infringement over the Internet. *Criminal Action*, Dkt. No. 34, *Superseding Indictment* ¶ 1 (identifying alleged conspirators, alleged object of conspiracy, and allegedly illegal income from the alleged scheme). A comparison of the complaint and the indictment reveals that both the criminal charges and the claims asserted in this civil action (brought by two of the alleged crime victims) involve the same alleged actors, misconduct, objective, means, and injuries.[1]

---

[1] The Court may take judicial notice of court records and pleadings in related criminal cases. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989). Plaintiffs also have appeared in the *Criminal Action* as "interested parties." *Criminal Action*, Dkt. No. 80.

Defendants Kim Dotcom and Megaupload Ltd. moved for a stay of this civil action (Dkt. No. 16). That motion was granted and then upheld on a motion for reconsideration filed by Plaintiffs (Dkt. Nos. 31 & 36). The stay was entered on May 30, 2012 for 180 days, "absent a substantive change in circumstances in either this cause of action or the related criminal matter, at which time either party may seek relief from the Court" (Dkt. No. 31). The 180-day period is winding down, and Defendants respectfully submit that there are grounds for continuing the stay.

The Court explained that it granted "a limited stay" based upon a "balancing" of the parties' "competing interests"—that is, Defendants' interest in preserving potential "Fifth Amendment protections" that would arise upon their extradition, and Plaintiffs' interest in a prompt adjudication of the civil action and the "ability to meaningfully recover" on any "favorable judgment" (Dkt. No. 36, *Order* at 1-2). As is shown below, the balance still tips in favor of a stay of this civil action.[2]

## STATEMENT OF THE CASE

Defendants incorporate the STATEMENT OF THE CASE set forth in their opening brief (Dkt. No. 17, *Def. Stay Br*. at 2-5). Defendants also assume the Court's familiarity with recent filings in the *Criminal Action*. Therefore, the recent developments in the *Criminal Action* are only briefly explained below.

***Extradition Proceedings:*** The Defendants in the criminal and civil cases are foreign nationals. Presently, the individual criminal defendants (including Kim Dotcom and Mathias Ortmann, who are named as defendants in this civil action) are the subject of extradition proceedings in New Zealand related to the *Criminal Action*. The Court has previously

[2] Defendants' counsel contacted Plaintiffs' counsel to see if Plaintiffs would agree to the continuation of the stay. They will not, and Plaintiffs plan to file an opposition to the continuation of the stay.

considered the pendency of the extradition proceedings in balancing whether to grant a stay in this civil case. The Court noted that "the extradition proceedings are ongoing," and that "the possibility of extradition and potential future self-incrimination weighs strongly in favor of staying this action until the applicability of the Fifth Amendment protection becomes more certain" (Dkt. 36, *Order* at 2). The prospect of the individual defendants' extradition to the United States, however, has not yet become more certain.

The extradition proceedings have not concluded. The timeline for resolution of the extradition proceedings, in fact, has been lengthened. The extradition hearing in the trial court in New Zealand had been set for August 2012. The extradition proceedings were continued, however, because of an interlocutory appeal filed by the New Zealand prosecutors.

Specifically, on June 28, 2012, the trial court in New Zealand entered an order finding that search warrants executed in New Zealand were "invalid," and that the resulting searches and seizures were "illegal." *Criminal Action*, Dkt. No. 137-1 (¶ [144] (a)-(h)). Among the findings was a determination that the New Zealand authorities wrongly released certain "cloned hard drives" to the FBI for shipping to the United States. *Id*. (¶ [144] (f)). The New Zealand prosecutors then filed an interlocutory appeal from those findings. The United States, in fact, recently reported to this Court that those issues were now "under review before the New Zealand Court of Appeal (and with the likely prospect of being ultimately resolved before the Supreme Court of New Zealand)." *Id*., Dkt. No. 132, *Govt. Brief* at 6-7. In light of the New Zealand prosecutors' interlocutory appeal, the extradition hearing was continued at the Defendants' request from August 2012 to May 2013 (at the earliest).

In addition, on September 27, 2012, the Inspector General of Intelligence and Security for the government of New Zealand issued a report to the Prime Minister of New Zealand, finding a

"breach of statutory restrictions" on domestic surveillance based upon the surveillance of defendant Kim Dotcom, who, as a "holder of a residence class visa," is a "protected person" within the meaning of the applicable statute. *Id*., Dkt. No. 137-2. This breach was committed by the New Zealand police and intelligence agents involved in the arrest of the individual defendants in New Zealand. The New Zealand government issued an apology to Kim Dotcom,[3] but the full legal ramifications of this statutory violation are not yet clear.

***The Criminal Action:*** In the *Criminal Action*, Defendant Megaupload Ltd. has renewed its motion to dismiss for lack of personal jurisdiction and due process violations. *Criminal Action*, Dkt. Nos. 114 & 128-2. The Court has ordered full briefing on the renewed motion. *Id*., Dkt. No. 142. The government is expected to oppose that motion. Moreover, there is ongoing motion-practice under Criminal Rule 41(g) regarding the request by an interested party, Kyle Goodwin, for return of his personal property. The Court has recently unsealed some search warrant filings. *Id*., Dkt. No. 143. After further briefing and a hearing (*Id*., Dkt. No. 126), the Court will address the issue of interested party access to the Carpathia Servers.

**DEFENDANTS' STATEMENT OF POSITION**

A federal court has discretion to stay a civil case pending the resolution of a criminal proceeding. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *accord AvalonBay Communities, Inc. v. San Jose Water Conservation Corp.*, No. 1:07cv306 (GBL), 2007 U.S. Dist. LEXIS 63773, *3-4 (E.D. Va. Aug. 27, 2007) (discretion); *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 557-58 (E.D. Va. 1995) (same). In exercising that discretion, judges of this Court generally apply the balancing test stated in *Landis v. North American Co.*, 299 U.S. 248 (1936).

[3] *See Megaupload Spying Case Brings New Zealand Apology*, B.B.C. NEWS, Sept. 27, 2012, *available at* http://www.bbc.co.uk/news/technology-19741343.

*See AvalonBay*, *supra*, at *3-4; *Burns v. Anderson*, 1:02cv1326 (JCC), 2006 U.S. Dist. LEXIS 59150, *9-10 (E.D. Va. Aug. 22, 2006) (applying *Landis*); *Phillips*, 896 F. Supp. at 558 (applying *Landis*). Under the *Landis* test, the Court has inherent, discretionary power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," and "to coordinate the business of the court efficiently and sensibly," provided that such relief does not cause hardship to any party. *Landis*, 299 U.S. at 254-55. Exercising this discretion, the Court has twice ruled that a stay was warranted in this case (Dkt. Nos. 31 & 36). Defendants respectfully submit that the stay should be continued.

Under the *Landis* balancing test, certain equities still weigh "strongly in favor of staying this action until the applicability of Fifth Amendment protection becomes more certain" (Dkt. No. 36, *Order* at 2). Despite the passage of time and the extended timetable for the extradition proceedings in New Zealand, the essential equities have not changed since May 30, 2012. Defendants still face extradition, and therefore still have an interest in preserving the Fifth Amendment rights that arise from the prosecution of the *Criminal Action* in an Article III court in the United States. Moreover, the lengthening of the extradition schedule has not been the fault of the individual defendants. Their vigorous opposition to the extradition proceedings has not been dilatory—far from it. The New Zealand trial court has found that the New Zealand authorities, acting on behalf of and in cooperation with the United States, have committed repeated and serious violations of the individual defendants' rights, for which the individual defendants have been successfully pursuing legal redress. Accordingly, Defendants respectfully submit that the equities still weigh "strongly in favor" of the stay.

No countervailing hardship or prejudice to Plaintiffs will result from continuing the stay. As the Court previously recognized, Defendants' operations have been completely shut down,

halting all alleged infringing activity (Dkt. No. 36, *Order* at 2). Moreover, Defendants' assets have been seized, subject to forfeiture to the United States, eclipsing Plaintiffs' potential right to reach those assets as judgment creditors should they prevail in the civil action (*Id*.). Finally, certain evidence—the computer files stored on servers, including the Carpathia Servers—remains on hold (*Id*.).[4] Continuing the stay, therefore, will not result in hardship or prejudice to Plaintiffs.

On balance, then, the equities still weigh strongly in favor of staying this civil action.

**CONCLUSION**

For the reasons stated above, Defendants Kim Dotcom and Megaupload Ltd. respectfully submit that the order staying this civil action should be extended for an additional 180 days, subject to the parties' rights to seek relief based upon a substantive change in circumstances in either this cause of action or the related criminal matter.

Dated: November 16, 2012.

Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com

*and*

[4] Defendants' interests in the files on the Carpathia Servers are aligned with Plaintiffs'—both seek to have those computer files preserved and accessible as evidence. At this point, however, the servers remain inactivated, and those files are inaccessible. Negotiations with the United States to devise a protocol for access and preservation have not resulted in an agreement.

Ira P. Rothken (pro hac vice pending)
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

*Counsel for Defendants Kim Dotcom and Megaupload, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2012, the foregoing pleading or paper was filed and served electronically by the Court's CM/ECF system upon all parties:

William Clifton Holmes
DUNLAP, GRUBB & WEAVER PLLC
199 Liberty St SW
Leesburg, VA 20175
703-777-7319
Fax: 703-777-3656
Email: cholmes@dglegal.com
*Counsel for Plaintiffs*

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for Defendants Kim Dotcom and Megaupload, Ltd.*