IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| MICROHITS, INC., *et al.*, | ) ) |
| Plaintiffs, | ) ) ) Civil Action No. 12cv327 (LO) |
| v. | ) ) |
| MEGAUPLOAD, LTD., *et al.*, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' OPPOSITION TO CONTINUED STAY
OF THE INSTANT PROCEEDINGS**

Plaintiffs Microhits, Inc. and Valcom, Inc. hereby respectfully file the instant Opposition to a further stay of the instant proceedings pending resolution of the criminal matter captioned as *United States v. Dotcom, et al.*, 12cr03 (E.D. Va.). For the reasons set forth below, the 180 day stay of this matter entered by this Court on May 31, 2012 should not be further extended.

**DISCUSSION**

A stay of a civil case is an "extraordinary remedy." *Walsh Securities, Inc. v. Cristo Property Management, LTD.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (quoting *Weil v. Markowitz*, 829 F.2d 166, 174 n. 17 (D.C. Cir. 1987)). A further continued "extraordinary" stay of the instant matter (which has already been stayed for 180 days) is not justified based on the current procedural posture of the 12cr03 matter separately pending against the Defendants to this action.[1]

---

[1] Defendants MegaUpload, Limited and Kim Dotcom were served with summonses and copies of Plaintiffs' Complaint on April 10, 2012 and April 13, 2012, respectively. Dkt. Nos. 9, 11. A third Defendant, Mathias Ortmann, was served on May 7, 2012. Dkt. No. 29. At this time it does not appear likely that Plaintiffs will be successful in effecting service on Defendant Vestor Limited.

I. **Defendants' Potential Extradition Remains a Mere Possible Future Occurrence, and a Potentially Unlikely One at That.**

As this Court is well aware, the Defendants to the 12cr03 criminal matter pending before this Court, three of whom are active Defendants to the instant litigation,[2] have not yet been extradited to the United States. The status of the instant litigation is actually more advanced than that of the 12cr03 litigation, in that all those Defendants against whom Plaintiffs intend to litigate this matter (Mathias Ortmann, Kim Dotcom, and MegaUpload Limited) have already been served in this case. *See* Dkt. Nos. 9, 11, 29. This is a critical distinction in comparing the current status of this case and that of the 12cr03 case, in that Defendant MegaUpload Limited has not been served in the 12cr03 case. Accordingly, this Court has held in the 12cr03 matter that the United States' indictment against MegaUpload Limited may be subject to dismissal if certain contingencies (specifically, a demonstration that MegaUpload Limited served as the alter ego of one of the other Defendants) cannot be satisfied. *United States v. Kim Dotcom, et al.*, 12cr03 (Order) (Dkt. No. 127) (Oct. 5, 2012); *see also American Civil Liberties Union v. Holder*, 652 F. Supp. 2d 654, 663 (E.D. Va. 2009) (emphasis added), *aff'd, American Civil Liberties Union v. Holder*, No. 09-2086, — F.3d —, 2011 U.S. App. LEXIS 6216 (4th Cir. March 28, 2011) ("the adversarial litigation process does not even begin until the complaint is…served on the defendant").

On the whole, the extradition of individual Defendants Kim Dotcom and Mathias Ortmann remains a mere possible future event, but indeed an event which may in fact never occur. *Accord* http://www.ipsofactoj.com/international/2004/Part05/int2004(5)-012.htm (Court of Appeal of New Zealand) (Dec. 18, 2002) (disposing of three and one half year effort by the

---

[2] As noted immediately above (note 1), those Defendants are Mathias Ortmann, Kim Dotcom, and MegaUpload Limited.

United States to extradite New Zealand citizen Robert Cullinane). There is no end in sight to the current criminal extradition proceedings, with the next extradition hearing scheduled for March 2013, but with both the Defendants and the United States possessing the prerogative of appeal as to any ruling by the lower court. Indeed, were the stay on this case to be removed, the case could likely be resolved by April 2013, or, in other words, indisputably *before* the Defendants even stand to be extradited to the United States. In light of the mere *potentiality* of such future extradition (as opposed to actuality), the procedural posture of this case is actually quite close to that of a leading case decided by the District Court for the Southern District of New York in 1993, in which the District Court declined to enter a stay of a pending civil case. *Citibank, N.A. v. Hakim, et al.*, 1993 U.S. Dist. LEXIS 16299 (S.D. N.Y. 1993) (Mukasey, J.).

In *Hakim*, wherein the plaintiff bank sought to recover monies allegedly pilfered from bank accounts by the civil defendants, there was an acknowledged risk that the civil defendants to that action could be indicted on account of a known "continuing grand jury investigation." *Id.*, 1993 U.S. Dist. LEXIS at *2 ("Although defendant Hakim allegedly is a target of a continuing grand jury investigation, he does not claim to have been indicted."). Here, the posture is precisely analogous in that like the *Hakim* defendant, who only faced the possibility of a criminal trial, the MegaUpload entities do not face an imminent criminal trial of any kind, but rather merely the potentiality of a possible, future criminal trial: the MegaUpload entities, though indicted, have not yet (and may never be) extradited to the United States. Incidentally, such event (the Defendants' extradition), is the sole event which would vest in the Defendants Fifth Amendment rights under the U.S. Constitution. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("we have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States.") (citing *Johnson v. Eisentrager*, 339 U.S.

3

763 (1950)).[3] This Court's stay of this action is thus highly notable in that the Court is allowing the instant Defendants to avoid liability in this action on account of *future* Fifth Amendment rights they may <u>never</u> obtain, whereas, "[p]re-indictment requests for a stay of civil proceedings are generally denied," *including* in instances where the civil defendants are U.S. residents, *i.e.*, they <u>already</u> possess Fifth Amendment rights that could be jeopardized through their participation in civil proceedings. *United States v. Private Sanitation Industry Ass'n*, 811 F. Supp. 802, 805 (E.D.N.Y. 1992).

The *Hakim* court denied the defendant's request for a stay of the civil case pending resolution of the continuing grand jury investigation, citing three factors. First, the Court held that grant of a stay would deny the plaintiff its "right to speedy discovery and resolution of the dispute." *Hakim*, 1993 U.S. Dist. LEXIS at *4. Second, the Court held that grant of the stay was not warranted in that the identity of the civil plaintiff (Citibank N.A.) was distinct from the identity of the criminal charging entity (*i.e.*, the United States), thus lessening the "potential for prejudice to the defendant," in that it was "less likely that the civil discovery process would be

---

[3] *Hakim* is also somewhat analogous to the instant case on the underlying facts as well in that as in *Hakim*, the Defendants to the instant action are alleged to have "pilfered" bank account monies wrongly belonging to plaintiffs, with the difference being that the monies at issue in *Hakim* resided in bank accounts, whereas in the instant case, the monies at issue (now held in bank accounts) are those that rightfully belong to Plaintiffs as holders of copyrights which the Defendants used to wrongfully generate (and keep) revenues for themselves. *U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 931 F.2d 888 (4th Cir. 1991) (the U.S. Copyright Act contains express provisions "to compensate the copyright owner and to discourage the infringer by disgorging his profits."); *see also* 12cr03 matter, Opposition by United States to Motion for Leave to File to Enter Limited and Special Appearances and to Exceed Page Limit (June 13, 2012), at 21 ("Where, as here, the government seeks to preserve seized and restrained assets for a 'restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim.'") (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629-630 (1989)).

used as a cloak to conduct criminal discovery." *Hakim*, 1993 U.S. Dist. LEXIS at *7.  Third, the District Court cited the risk of dissipation of assets, noting that:

> further delays likely will prejudice its ability to enforce any eventual judgment overseas. This argument carries added weight because the parties, their assets, and certain evidence are now far-flung, in that defendant Hakim, and several of the other defendants, evidently have fled to Colombia.

*Hakim*, 1993 U.S. Dist. LEXIS at *5 (citations omitted).

That risk of dissipation of assets is equally if not more evident here, and based on new facts: Defendant Kim Dotcom has brazenly promised that once the pending 12cr03 criminal case resolves (if it resolves without extradition of the Defendants and without conviction of the Defendants), upon the un-freezing of his assets, Mr. Dotcom will unflinchingly continue the activities of the former www.megaupload.com site (*i.e.*, trading on copyrighted works) by re-investing the now-frozen monies, only in a fashion intended to avoid the jurisdiction of U.S. courts (including this court).  *See* http://torrentfreak.com/new-megaupload-to-launch-on-police-raid-anniversary-121026/ ("New Megaupload To Launch On Police Raid Anniversary") (Oct. 26, 2012) (last visited Nov. 28, 2012); http://torrentfreak.com/kim-dotcom-avoids-unsafe-com-picks-me-ga-for-new-megaupload-121101/

https://twitter.com/KimDotcom/status/261751810098876416 (post to Twitter.com by Defendant Dotcom) (promising the "The new Mega will launch exactly 1 year after the raid with a #MansionPressConference & #DoomsdayLaunchButton.") (last visited Nov. 28, 2012);

http://torrentfreak.com/kim-dotcom-avoids-unsafe-com-picks-me-ga-for-new-megaupload-121101/ ("Kim Dotcom Avoids 'Unsafe' .Com [Domain Name], Picks Me.Ga for New Megaupload") (quoting Mr. Dotcom as stating, "Unfortunately we can't work with hosting companies based in the United States. Safe harbour for service providers via the Digital

5

Millennium Copyright Act has been undermined by the Department of Justice with its novel criminal prosecution of Megaupload.") (last visited Nov. 28, 2012).  In sum, the Defendants here have openly avowed to move their assets and operations out of reach of the United States, which cannot but "prejudice [Plaintiffs'] ability to enforce any eventual judgment overseas." *Hakim*, 1993 U.S. Dist. LEXIS at *5.

## II.   There Now Exists an Acute Risk of Indefinite Delay of the Instant Matter.

While Plaintiffs recognize that the Court sought to monitor closely the pending criminal matter against Defendants, Plaintiffs believe the Court, in electing to enter a stay of only 180 days, also properly recognized that staying Plaintiffs' case indefinitely would have constituted an inappropriate impingement on Plaintiffs' rights.  *Karimona Investments, LLC v. Weinreb*, 2003 U.S. Dist. LEXIS 3324, at *8 (S.D.N.Y. 2003) ("Plaintiff has an interest in the expeditious resolution of this action and legitimately fears that its entire case will be indefinitely delayed.").  However, it is not even "indefinite" resolution of Plaintiffs' action that could, and stands to, further trammel Plaintiffs' rights in this matter.  Indeed, further stays in 180 day increments by this Court threaten to delay litigation of the instant suit for years, and beyond even the three year period that the United States Congress has proscribed as the applicable statute of limitations for claimed Copyright Act violations.  While further stays would not implicate the timeliness of Plaintiffs' filing of their lawsuit itself, the stays create the very perils that the U.S. Copyright Act's statute of limitations period was created to prevent.

Statutes of limitations "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Texaco, Inc v. Short Pond v. Walden*, 454 U.S. 516, 551 (1982) (quoting *Chase Securities Corp. v. Donaldson*, 325

U.S. 304, 314 (1945)). Though *Texaco* speaks of the interests of citizen "defen[dants]," statute of limitations periods protect the interests of both plaintiffs and defendants by guarding against loss of "memories" and "evidence."

Indeed, Congress implemented the three year statute of limitations period that applies to U.S. Civil Copyright Act claims, 17 U.S.C. § 507(b), after noting that "in Alabama the statute of limitations applied to this type of action is [one] year," in New York the period was "apparently [six] years," and in Wyoming "the period was [eight] years." S. REP. NO. 85-1014, at 2 (1957). The Report, citing California's two-year statute of limitations due to the "centralization of the movie industry," added that "[s]tates where the incident of copyright actions is low have applied longer periods for the commencement of actions." *Id.* Finally, the Report noted that the legal adviser of the Copyright Office, representatives of the American Bar Association, and "interested industrial associations" agreed to a three-year uniform statute of limit ations, "feeling that this represents the best balance attainable to this type of action." *Id. Because* it does not appear reasonably likely that the pending 12cr03 criminal case against Defendants stands to be resolved within the foreseeable future, and certainly not within three years,[4] it would be appropriate for the Court to immediately lift the stay on the proceedings of the instant case. Further grants of 180 day stay periods threaten to put the actual trial of this case well beyond three years after the events and facts that underlie the case itself. This is not what Congress intended in enacting 17 U.S.C. § 507(b).

---

[4] *Accord* http://www.ipsofactoj.com/international/2004/Part05/int2004(5)-012.htm.

III. **<u>At Minimum, a Partial Lifting of the Stay in this Case is Appropriate.</u>**

The stay *in toto* of this action runs afoul not only of Local Rule 16(B),[5] but also of the guidance of the D.C. Circuit Court of Appeals that "non-resident aliens" "plainly cannot appeal to the protection of the Constitution or laws of the United States." *Pauling v. McElroy*, 278 F.2d 252, 254 n.3 (D.C. Cir. 1960). *Pauling* is consistent with the guidance of the Fourth Circuit Court of Appeals, which has held that non-resident aliens, such as Defendants Dotcom and Ortmann, simply possess no Fifth Amendment rights whatsoever. *Vancouver Women's Health Collective Soc'y*, 820 F.2d 1359 (4th Cir. 1987). The Fourth Circuit noted:

> While the Supreme Court has not specifically held that nonresident aliens do not enjoy the rights and privileges provided by the United States Constitution, it has intimated that rights under the U.S. Constitution extend only to citizens and to "individuals" within the jurisdiction of the United States.

*Id.*, 820 F.2d at 1363. Accordingly, the Fourth Circuit denied the foreign claimants' constitutional claim in the *Vancouver Women's Health* case, specifically holding:

> <u>*The Constitution does not extend its guarantees to nonresident aliens living outside the United States.*</u>

*Id* (emphasis added). *See also Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n. 5 (1953) (it is only "once an alien lawfully enters and resides in this country [that] he becomes invested with . . . rights . . . protected by . . . the Fifth Amendment[ ] and by the due process clause of the Fourteenth Amendment") (internal quotation marks omitted). Indeed, however, even presuming that this Court were to recognize unto Defendants Dotcom and Ortmann Fifth Amendment rights

---

[5] *See* L.R. 16(B) ("In all other civil actions, as promptly as possible after a complaint or notice of removal has been filed, the Court *shall schedule* an initial pretrial conference to be conducted in accordance with Fed. R. Civ. P. 16(b).") (emphasis added).

8

which they simply do not possess,[6] there would be no prejudice <u>whatever</u> as to the Defendants in allowing this case to proceed: "to permit plaintiff to proceed in normal course against [a civil defendant] would not prejudice [the civil defendant] in the criminal prosecution. Upon any deposition, [the defendant's] constitutional privilege against self-incrimination may be asserted, if there is proper ground therefor." *Paine, Webber, Jackson & Curtis Incorporated v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980).

It thus becomes difficult to justify a continued stay of this matter for any period of time, and for any purpose. However, if any continued stay is contemplated, the stay should be lifted at least in part, to the extent of allowing the Defendants to challenge (if they choose to) Plaintiffs' pleadings under Rule 12(b) or any other ground that Defendants should seek to advance. This could greatly simplify future events in this case in that it appears clear beyond cavil that the Defendants intend to seek to use their "future" "Fifth Amendment rights" as both a sword and a shield into perpetuity so as to flout both potential civil and criminal liability for their actions, to the extent that Defendants will doubtless refuse to appear in person for a trial in this matter (insofar as doing so would necessitate their trial in the 12cr03 criminal matter). That being the case, there is a palpable likelihood that the instant litigation will ultimately be resolved via entry of default judgment against the Defendants. *E.g., Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, v. Medfit Int'l, Inc., et al.*, 982 F.2d 686, 693 (1st Cir. 1993) ("On February 28, 1992, the district court entered default judgment against Rodriguez for his failure to appear at trial. Rodriguez challenges this order, arguing that…plaintiff failed to prove its case on the merits at trial… Defendant's argument ignores the maxim that an entry of a default against a defendant

---

[6] It is undisputed that Defendant MegaUpload Limited does not possess Fifth Amendment rights. *Wilson v. United States*, 221 U.S. 361, 383 (1911); *see also United States v. White*, 322 U.S. 694, 701 (1944).

establishes the defendant's liability."). Even presuming such default judgment were not inevitable, a partial lift of the stay in this case will have the benefit of potentially clarifying and refining key issues in the case for future trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the stay entered by this Court on May 31, 2012 must be lifted.

Respectfully submitted,

/s/
Thomas M. Dunlap, Esq.
Virginia Bar No. 44016
W. Clifton Holmes, Esq.
Virginia Bar No. 78157
David Ludwig, Esq.
Virginia Bar No. 73157
Dunlap, Grubb & Weaver PLLC
199 Liberty St, SW
Leesburg, VA 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dglegal.com
cholmes@dglegal.com
dludwig@dglegal.com

Counsel for Plaintiffs Microhits, Inc. and Valcom, Inc.

November 29, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of November, 2012, I caused copies of the foregoing to be served upon the following via the CM/ECF system:

>Craig C. Reilly, Esq. (VSB # 20942)
>111 Oronoco Street
>Alexandria, Virginia 22314
>TEL (703) 549-5354
>FAX (703) 549-2604
>craig.reilly@ccreillylaw.com
>
>Ira P. Rothken, Esq.
>ROTHKEN LAW FIRM
>3 Hamilton Landing
>Suite 280
>Novato, CA 94949
>(415) 924-4250
>(415) 924-2905 (fax)
>ira@techfirm.net
>*Counsel for Defendants*

_____/s/_____
W. Clifton Holmes